SECOND DIVISION 

December 11, 2001

No. 1-00-2586

MARVIE ACHANZAR, 

Plaintiff-Appellant,

v.

RAVENSWOOD HOSPITAL, LETICIA GARCIA, and ELVIRA BERGANOS,

Defendants-Appellees.

)))))))))

)

Appeal from the

Circuit Court of

Cook County

No. 98 L 3311

Honorable

Donald Devlin,

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

Plaintiff Marvie Achanzar appeals a judgment for defendants and the denial of his motion for a new trial.  The main issue we address is a contention of the plaintiff that whether a qualified privilege exists as a defense in a workplace defamation action is a question of fact for the jury.  The trial court believed that the existence of circumstances creating a qualified privilege in the workplace is a question of law and that the question of whether the privilege has been abused is a question of fact for the jury.  We agree and affirm.

Plaintiff worked as a medical technologist for defendant Ravenswood Hospital and Loyola University Medical Center.  He was fired from his position at Ravenswood Hospital in January 1998, after allegedly threatening to kill hospital employees.  Plaintiff then sued defendants Leticia Garcia, his supervisor, Elvira Berganos, a coworker, and Ravenswood Hospital for defamation.  The following evidence was taken at trial.

Plaintiff worked full time at both Ravenswood Hospital  and Loyola Medical Center, a total of 16 hours a day.   Plaintiff testified that he is a peaceable man, actively involved in his church.  Plaintiff denied that he threatened to kill anyone.  He also denied spelling the word "kill" in front of defendants Berganos  and Garcia.  Plaintiff received a letter from Ravenswood Hospital on January 28, 1998, notifying him that he had been suspended for making threats.  Plaintiff said he was stunned when he received the letter because he had not made threats.

Plaintiff spoke with the human resources department at the hospital and learned that defendants Berganos and Garcia said that plaintiff threatened to kill someone at the hospital.  Plaintiff denied making threats.  Plaintiff could not remember if he had said his remarks were misunderstood.

On cross-examination, plaintiff said he was not sure if defendants Garcia and Berganos were  friends.  Plaintiff admitted that Garcia helped him in getting his job at Ravenswood.  He said that, in January 1998, Garcia and Berganos "turned on" him, but that he did not know why.  Plaintiff also described an incident with Nemira Grigaliunas, a blood bank supervisor, in September 1997.  Grigaliunas came to the lab and asked plaintiff to help her.  Plaintiff pushed a chair and told Grigaliunas not to treat him like an "alley dog."  Plaintiff said he became upset, not angry, and that he used the same tone of voice as he was using in court.  He denied telling Grigaliunas that he was going to kill her.  

Plaintiff described another incident in October 1997, involving Nancy Vruno, a microbiology technician.  Plaintiff was sorting through lab coats, looking for his, while Vruno watched.  He did not remember what was said.  Plaintiff denied yelling at her.  He asked why she did not let him use a certain hanger and then left.  Plaintiff did not remember returning and yelling at Vruno.  Plaintiff did not say he was going to kill Vruno.

Plaintiff described another incident in January 1998.  Darien Sayfi called from the emergency room for test results on a critical patient.  Plaintiff told Sayfi he was busy and would call when the results were ready.  He then hung up the phone.  Sayfi came to the laboratory and asked who had just hung up on him.  Plaintiff approached Sayfi but did not yell at him.  Plaintiff did not ask him to fight and also denied telling Sayfi he would kill him.  Security was called but Sayfi left before they arrived.   Plaintiff met with defendant Garcia about the Sayfi incident.  Garcia prepared a report which included a statement that plaintiff had an "emotional outburst."  Plaintiff asked Garcia to remove these terms from the report but he did not believe she did.  Plaintiff did not remember receiving a revised report.

Nemensia Achanzar testified she was plaintiff's wife.  Nemensia was at Ravenswood Hospital on January 19 and 20, 1998, with her daughter Nina, who was ill.  Garcia and Berganos came to Nina's hospital room and told Nemensia that her husband had threatened someone in the hospital.  Nemensia said she did not believe it.  Nemensia denied saying that her husband had a gun and would shoot Garcia and Berganos.  Neither Garcia nor Berganos asked how Nemensia's daughter was feeling.  They left after making the accusation about her husband.  

On cross-examination, Nemensia denied calling the police about her husband.  Defendants were precluded from impeaching Nemensia with a prior inconsistent statement when plaintiff's objection was sustained.

Coworkers Dante Yague, Nestor Aconce, Barbara Duck and Mark Trevino each testified that plaintiff was a peaceable, gentle man.  Duck witnessed the incident with Sayfi and said that security was called because of Sayfi's behavior, not plaintiff's.  

Leticia Garcia testified she heard that plaintiff had made two earlier threats to hurt Ravenswood employees.  She also witnessed plaintiff's altercation with Sayfi and decided to file a report.  Garcia granted plaintiff's request to remove the term "emotional outburst" and filed a revised report.  Plaintiff then told Garcia that if he was written up, he would kill someone.  Plaintiff later repeated the threat in front of Garcia, Berganos and other witnesses while in a break room, implying that he had killed someone in the past and spelling out the word "kill."  Garcia had filed written reprimands about plaintiff before for tardiness and inaccurate test results.  Ravenswood had a progressive disciplinary system at that time.  Written reprimands did not result in termination.  Discipline was determined case by case.

Nemira Grigaliunas is a blood bank supervisor.  She said that plaintiff became enraged when she tried to get his attention.  Grigaliunas described plaintiff's behavior as that of a "raging animal."  Grigaliunas said plaintiff later apologized, but she could not finish her shift because the incident left her unsettled.  

Elvira Berganos testified that, while she was in a break room in the hospital, she heard plaintiff say he was going to kill someone.  Berganos heard plaintiff use the word "kill" three times.  She witnessed the incident between plaintiff and Grigaliunas.  Plaintiff became angry and kicked a chair that almost hit Berganos.  

Nancy Vruno, a microbiology team leader, said she told plaintiff he could borrow a lab coat if he asked permission to do so.  Plaintiff became angry and started yelling at her.  He left the room and came back five minutes later.  Vruno said plaintiff was extremely agitated, intimidating and threatening.  Vruno was afraid plaintiff was going to hit her.  Vruno denied that plaintiff said he was going to kill her.

Darien Sayfi, an emergency room clerk, testified that he confronted plaintiff after plaintiff hung up on him.  Plaintiff asked Sayfi if he wanted to fight him.  Duck called security while Aconce tried to calm plaintiff.  Sayfi then left.  Sayfi denied hearing that plaintiff threatened to kill him or anyone else.   Garcia testified that she reported the threats to her supervisor, Jim Fortier, who then contacted the human resources department.  Plaintiff was suspended pending investigation of the allegations against him.  Eric Benson, vice president of the human resources department, interviewed plaintiff, Garcia and Berganos.  Plaintiff admitted involvement in an argument with Sayfi and using the words "kill" and "killing fields," but later claimed that he was misunderstood.  He denied all wrongdoing.  Benson asked plaintiff to name witnesses who could support his claims.  No witnesses were named.  Benson concluded that plaintiff's conduct threatened the safety of Ravenswood Hospital employees and terminated him. 

Plaintiff's defamation suit against Ravenswood, Garcia and Berganos alleged that he had been falsely accused of threatening to kill someone at the hospital.  At the end of evidence, the trial court instructed the jury that the defendants were privileged to publish the statements about plaintiff and that the jury must then decide whether defendants' conduct abused that privilege.  Plaintiff objected to these instructions.  The jury returned a verdict in defendants' favor. 

Plaintiff frames two issues on appeal: (1) the question of whether a privilege exists is for the jury to decide; and (2) plaintiff was prejudiced by one question posed to his wife during cross-examination.  Plaintiff contends that these errors require a new trial.  

Plaintiff claims that the jury was improperly instructed when the trial court told the jury that defendants' communication was privileged and the jury need only decide if defendants abused the privilege.  Plaintiff claims that the jury should have decided whether the privilege applied as well as whether the privilege was abused.  He argues that 
Kuwik v. Starmark Star Market & Administration, Inc
., 156 Ill. 2d 16, 619 N.E.2d 129 (1993), supports his position.  Plaintiff misreads 
Kuwik
 and overlooks established law.

Kuwik
 held that the issue of whether a qualified privilege exists is a question of law for the court. 
  
Kuwik
, 156 Ill. 2d at 25.  A privilege exists when: (1) a statement is made in good faith by the defendant; (2) the defendant has an interest or duty to uphold; (3) the statement is limited in its scope to that purpose; (4) it is made in a proper occasion; and (5) the statement is published in a proper manner to the proper parties.  
Kuwik
, 156 Ill. 2d at 25, citing 
Zeinfeld v. Hayes Freight Lines, Inc
., 41 Ill. 2d 345, 349, 243 N.E.2d 217 (1968), and 
Mittelman v. Witous
, 135 Ill. 2d 220, 237, 552 N.E.2d 973 (1989).  The 
Kuwik
 court then set out how a trial court is to decide the legal question of whether a privilege existed and adopted the approach taken in the Restatement (Second) of Torts (Restatement (Second) of Torts §§593 through 599 (1977)).  The emphasis in the Restatement is on the occasion for the communication and whether the occasion created an interest or duty making the communication privileged.  
Kuwik
, 156 Ill. 2d at 27.  The court said that this approach allows the factual inquiry of whether the privilege was abused to be placed in front of the jury.  
Kwuik
, 156 Ill. 2d at 27.  The facts here support the trial court's finding that a qualified privilege existed as a matter of law.  The alleged defamatory comment was made by a concerned coworker to a supervisor.  The statement was then published only to human resource department personnel charged with investigating incidents relating to worker safety.   The statement was properly limited in scope and purpose and was revealed only to proper parties.     

At no point did the 
Kuwik
 court state or suggest, as plaintiff contends,  that the jury would decide the legal question of whether a privilege applied.  No court after 
Kuwik
 has so suggested.  See, 
e.g.
, 
Thompson v. Frank
, 313 Ill. App. 3d 661, 664, 730 N.E.2d 143 (2000); 
Popp v. O'Neil
, 313 Ill. App. 3d 638, 642, 730 N.E.2d 506 (2000).  Even 
Zdeb v. Baxter International, Inc.
, 297 Ill. App. 3d 622, 697 N.E.2d 425 (1998), upon which plaintiff relies, acknowledged that whether a privilege exists is a question of law.  
Zdeb
, 297 Ill. App. 3d at 628. 

Plaintiff contends that adherence to the rule set out above results in a blanket privilege for defamatory statements made in the workplace.  This argument overlooks that a defendant first bears the burden of proving that a qualified privilege exists.  
Kuwik
, 156 Ill. 2d at 27.  Even if a privilege exists, a plaintiff may overcome it by showing that it was abused, and that question is subject to a jury's determination.  
Kuwik
, 156 Ill. 2d at 30.  The trial court here properly considered whether a privilege existed and then properly instructed the jury on plaintiff's burden to overcome it.

Plaintiff also claims that the trial court's instruction to the jury that there was a qualified privilege, while also giving plaintiff's instruction that plaintiff had to prove defendants were not privileged to make the statements, resulted in contradictory and confusing instructions.  We disagree. 

Plaintiff's argument is based on an instruction he tendered.  As a general rule, where a question is submitted to a jury at a party's request, that party cannot complain if a jury resolves the issue against him.  
Mazanek v. Rockford Drop Forge Co.
, 98 Ill. App. 3d 956, 959, 424 N.E.2d 1271 (1981).  Even if we relax the rule, plaintiff's argument is unpersuasive.  Plaintiff cites only a part of the instructions to support his confusion claim.  A review of all of the instructions shows that there was no contradiction.

Plaintiff's tendered instruction, given without objection, read:

"Plaintiff has the burden of proving each of the following propositions:

***

(4) The Defendants were not privileged to publish the statements ***."

Plaintiff claims this instruction contradicts defendants' instruction, which read:

"The Defendants in this case had a privilege to publish statements regarding the Plaintiff.  This privilege exists because of the employment context within which the statements were made.  The Defendant will lose the benefit of this privilege and therefore, will be liable for the statement if you find that they abused it."

We have already concluded that the trial court properly decided whether a qualified privileged existed as a matter of law.  The only issue for the jury was whether defendants abused the privilege.  Both of the instructions set out above convey this duty to the jury.  While plaintiff's instruction was not carefully worded, defendants' instruction served to explain that an abuse of the privilege would subject defendants to liability.  Two subsequent instructions, not referenced by plaintiff in his brief, further explain the limited scope of the privilege and the proof needed to establish its abuse.  The true test is whether the instructions given, taken together, fully and fairly apprise the jury of the relevant principles.  
Savage v. Martin
, 256 Ill. App. 3d 272, 284 (1993), citing 
Bass v. Washington-Kinney Co.
, 119 Ill. App. 3d 713, 457 N.E.2d 85 (1983).  

Plaintiff next contends that one question posed to his wife on cross-examination prejudiced the jury against him.  Plaintiff admits that this issue is subject to waiver for failure to object during trial and raise the issue in his posttrial motion.  Plaintiff asks that we overlook the waiver rule to ensure a just result.  
Riley v. Fair & Co., Realtors
, 150 Ill. App. 3d 597, 600, 502 N.E.2d 45 (1986).

Plain error review in the civil context applies when an error is so "egregious that it deprived the complaining party of a fair trial and substantially impaired the integrity of the judicial process itself."  (Emphsasis omitted.)  
Gillespie v. Chrysler Motors Corp
., 135 Ill. 2d 363, 377, 553 N.E.2d 291 (1990).  Under this record we do not believe that one question, posed during cross-examination of one witness, was so damaging as to impair the integrity of the process and deprive plaintiff of a fair trial.  Plaintiff's wife was asked if she had ever called the police about plaintiff.  Plaintiff's wife  said "no."  Plaintiff's objection to a later attempt to impeach using a prior inconsistent statement was sustained.  Plaintiff's claim that the question about a police call introduced irrelevant evidence overlooks that plaintiff himself introduced evidence about his reputation as a peaceable man.  Plaintiff also claims that the question prejudiced him in the eyes of the jury because a call to police implies that plaintiff engaged in criminal conduct.  We disagree.

The scope of cross-examination is within the discretion of the trial court and will not be disturbed absent an abuse of that discretion.  
McDonnell v. McPartlin
, 192 Ill. 2d 505, 533, 736 N.E.2d 1074 (2000).  One of the purposes of cross-examination is to test the credibility of witnesses.  
McDonnell
, 192 Ill. 2d at 533.  Plaintiff injected evidence about his peaceable nature and reputation.  Defendants properly challenged this evidence while cross-examining his wife.  There was no abuse of discretion.  We also note that a later attempt to impeach plaintiff's wife with a prior inconsistent statement was preempted when the trial court sustained plaintiff's objection.  Possible error based on the attempted impeachment is deemed cured.  See 
Simmons v. Garces
, 319 Ill. App. 3d 308, 321, 745 N.E.2d 569 (2001).  There was no error, egregious or otherwise, that damaged the integrity of plaintiff's trial.

A decision not to grant a new trial will not be reversed absent an abuse of discretion.  
McClure v. Owens Corning Fiberglass Corp
., 188 Ill. 2d 102, 132-33, 720 N.E.2d 242 (1999).  There was no abuse of discretion here.  The judgment of the trial court is affirmed.  

Affirmed.

BURKE, P.J., and GORDON, J., concur.