DANIEL A. POPKO, Plaintiff-Appellee, v. CONTINENTAL CASUALTY COMPANY *et al.*, Defendants-Appellants.

First District (6th Division)    No. 1—03—3389

Opinion filed January 21, 2005.

Allison C. Blakely and Philip F. Ackerman, both of Sonnenschein, Nath & Rosenthal, L.L.P., of Chicago, for appellants.

Michael W. Rathsack, of Chicago (Gerald D. Zansitis and Michael W. Rathsack, of counsel), for appellee.

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Upon returning from a planned two-week vacation and honeymoon to his workplace of almost 16 years, plaintiff Daniel Popko learned that he had lost his job for poor conduct he displayed during a performance review. Plaintiff sued defendants Continental Casualty Company, CNA Financial Corporation, d/b/a CNA, David Izzo, individually and as agent of CNA, and Steven Tefft, individually and as agent of CNA (collectively, defendants), for defamation and tortious interference with employment based on certain communications they made relating to his performance review. After trial before a jury, a verdict was returned in favor of plaintiff and against defendants, who now appeal the circuit court's orders entering judgment on the verdict and denying their posttrial motion.

Defendants contend on appeal that the court improperly considered the communications at issue to be publications for defamation purposes. They assert that the "nonpublication rule," or intracorporate communication exception to publication, applies to such communications and they effectively ask this court to reconsider Illinois law on the issue. Defendants also contend the court improperly granted one of plaintiff's motions *in limine*. We disagree with both contentions, and for the reasons that follow, we affirm the judgment of the circuit court.

## BACKGROUND

Plaintiff began working as an attorney for Continental Insurance Company (Continental) in 1983, where he continued to work after Continental later merged with CNA Financial Corporation, d/b/a CNA (CNA). At the times pertinent to his involuntary termination, plaintiff worked as a trial specialist in CNA's Downers Grove, Illinois, office. Defendant Steven Tefft was an assistant managing trial attorney and plaintiff's direct supervisor. Defendant David Izzo was Tefft's supervisor and also plaintiff's superior.

On July 2, 1999, Tefft conducted a performance review of plaintiff for the period from July 1998 to May 1999. During roughly the same

time period as that covered by the review, CNA's staff was being reduced. Plaintiff's previous reviews had all been good, including one conducted by Tefft and Izzo in January 1999. As a result of the July 2 review, however, plaintiff received a substantially lower evaluation than he had previously. The lower rating upset plaintiff and ultimately led to his termination.

After the July 2 review, Tefft and Izzo made oral and written statements that form the basis of this action. Tefft reported to Izzo that plaintiff used profanity during the review and that he challenged Tefft's authority. Plaintiff denied that he used the language or conducted himself in the manner described by Tefft.

Tefft recommended to Izzo that plaintiff's employment be terminated. Izzo agreed with the recommendation and reported the incident to his superior, CNA vice president Bruce Johnston. Johnston then obtained permission from human resources to fire plaintiff.

On July 13, 1999, Izzo prepared a written memorandum to Johnston on the subject of plaintiff's termination (the termination memo). In it, Izzo set forth several instances showing a "pattern of unacceptable conduct" by plaintiff beginning in August 1998. At that time, plaintiff moved from CNA's Chicago office to the Downers Grove office. Once there, according to the termination memo, plaintiff made derogatory comments about Tefft and Izzo to CNA's Downers Grove personnel. Plaintiff made similar derogatory comments several months later at a staff counsel meeting in the Chicago office. Finally, plaintiff's bad conduct "reached a breaking point" on July 2, 1999, when plaintiff became belligerent to Tefft and used profanity. Johnston agreed with Izzo's and Tefft's recommendations that plaintiff's employment be terminated.

On July 19, 1999, plaintiff was informed that his employment was involuntarily terminated for poor conduct.

Later that year, plaintiff filed an action against CNA, Izzo and Tefft, and others, for, among other things, defamation based on the falsity of the information contained in the termination memo.

The action ultimately proceeded to trial in January 2003 on claims of defamation *per quod* and intentional interference with prospective economic advantage against defendants CNA, and David Izzo and Steven Tefft, individually and as agents of CNA. The court granted plaintiff's motion *in limine* barring the introduction of evidence that he was an at-will employee.

At trial, testimony established that no investigation into the truth of the charges against plaintiff was conducted by defendants. Specifically, Johnston testified that he never asked plaintiff or other employees about the incident relating to the July 2 performance

review, and he did not consider plaintiff's prior good reviews. Tefft testified that plaintiff was not fired for his performance but for his conduct during the July 2 performance review. Testimony also established that Tefft later replaced plaintiff in his position at the Downers Grove office.

Defendants moved for a directed verdict based on the argument that there had not been a legally cognizable publication of the defamatory material. The court denied the motion.

The jury was instructed as to defendants' right to claim a qualified privilege concerning the communication of the defamatory material and as to the lack of protection provided defendants if that privilege were abused. Ultimately, the jury returned a verdict against defendants on all counts, *i.e.*, against all defendants on the defamation count and against Izzo and Tefft on the tortious interference count. The jury awarded plaintiff punitive damages against all defendants.

Defendants subsequently filed a posttrial motion challenging the judgment, which the court denied. This appeal followed.

## DISCUSSION

On appeal, defendants contend that the court improperly considered certain communications necessary to the employee performance evaluation and disciplinary process to be publications for the purposes of a defamation claim against an employer corporation and its agents. They also contend that the court committed reversible error by granting a motion *in limine*, thereby barring evidence of plaintiff's status as an at-will employee. We consider each contention separately.

### I

Initially, defendants present their theory of case, asserting that plaintiff's claims were cast as defamation in an attempt to circumvent law barring at-will employee actions for negligent evaluation and negligent termination. Defendants characterize the judgment entered by the court as "back-door" tort relief to which plaintiff was not entitled. Instead, defendants assert that the nonpublication rule applies here: they claim that the internal communications in this matter are merely a corporation "talking to itself" rather than publications for defamation purposes. To that end, defendants frame the central question in this case as whether intracorporate communications made during "an internal employee evaluation and disciplinary process" constitute publication sufficient to support a legally cognizable defamation claim against a corporate employer. Defendants claim that the circuit court incorrectly answered this question in the affirmative. We disagree.

■ The question presented by defendants is one of law, which we

review *de novo*. *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43, 802 N.E.2d 774 (2003); *Berry v. West Suburban Hospital Medical Center*, 338 Ill. App. 3d 49, 53, 788 N.E.2d 75 (2003).

▪ To prove defamation, a plaintiff must show that the defendant made a false statement about the plaintiff, there was an unprivileged publication to a third party by the defendant, and the publication damaged the plaintiff. *Gibson v. Philip Morris, Inc.*, 292 Ill. App. 3d 267, 272, 685 N.E.2d 638 (1997). See also *Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1020, 756 N.E.2d 286 (2001); *Cianci v. Pettibone Corp.*, 298 Ill. App. 3d 419, 424, 698 N.E.2d 674 (1998). Thus, publication is an essential element to a cause of action for defamation. *Gibson*, 292 Ill. App. 3d at 275; *Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center*, 137 Ill. App. 3d 294, 300, 484 N.E.2d 841 (1985).

The communication of interoffice reports within a corporation has previously been determined to constitute a publication for defamation purposes. *Gibson*, 292 Ill. App. 3d at 276; see also *Jones v. Britt Airways, Inc.*, 622 F. Supp. 389, 391-92 (N.D. Ill. 1985) (applying Illinois law).

However, for their argument that the communications at issue should not be considered publications, defendants rely primarily upon *Prins v. Holland-North America Mortgage Co.*, 107 Wash. 206, 181 P. 680 (1919) (setting forth nonpublication rule). Therein, the Washington Supreme Court held that there cannot be publication of a libel in the communication of defamatory matter within a corporation because the corporation is merely "communicating with itself." *Prins*, 107 Wash. at 208, 181 P. at 681. Defendants dispute that the nonpublication rule has been rejected in Illinois in *Gibson*. Rather, they assert that the rule has retained vitality for nearly the century since it was announced in *Prins* and urge this court to depart from Illinois law and apply it here. In support of their position, defendants cite cases from other jurisdictions which apply the rule.

Plaintiff counters that defendants misrepresent the law by ignoring the division of authority among courts nationwide concerning the application of the nonpublication rule. Plaintiff maintains that while some courts apply the rule, as defendants claim, many jurisdictions, including Illinois, have rejected it.

As acknowledged, courts are split over application of the nonpublication rule. See R. Sack, Sack on Defamation: Libel, Slander, and Related Problems § 2.5.3.1, *Division of Authority*, at 2-89, 2-91 (3d ed. 2004) ("courts remain badly split on the issue"). See generally 47 A.L.R.4th 674 *Defamation: Publication by Intracorporate Communication of Employee's Evaluation* (2004) (hereinafter 47 A.L.R.4th 674 *Defamation*) (discussing state and federal cases approving or rejecting

nonpublication rule pertaining to communication of a work evaluation of a corporate employee). Some courts hold, based on agency theory, that communications between employees or officers of the same corporation, acting on behalf of the corporation, are not communications to a third party as required for defamation. See 47 A.L.R.4th 674 *Defamation* § 3.a (listing authorities recognizing nonpublication rule). See also *Hagebak v. Stone*, 133 N.M. 75, 78, 61 P.3d 201 (App. 2002) (same). Although courts in other jurisdictions apply the rule, none of the cases defendants cite for its application are binding on this court.[1]

Contrary to defendants' representation of the issue, however, state and federal courts in Illinois—in addition to numerous other authorities—recognize that communication within a corporate environment may constitute publication for defamation purposes. See *Gibson*, 292 Ill. App. 3d at 276; *Jones*, 622 F. Supp. at 391. See also 47 A.L.R.4th 674 *Defamation* § 3.b (listing authorities rejecting nonpublication rule); *Hagebak*, 133 N.M. at 79, 61 P.3d at 205 (same).

First, in *Jones v. Britt Airways, Inc.*, 622 F. Supp. 389 (N.D. Ill. 1985), the Northern District of Illinois applied Illinois law in its rejection of the nonpublication rule. In *Jones*, as in the instant case, the plaintiff sued a former corporate employer for defamation in relation to certain statements that were made by other employees concerning her dismissal. The defendant corporation moved for summary judgment based in part on its assertion of the nonpublication rule. The defendant argued, as defendants do here, that a communication by one corporate agent to another does not constitute publication.

The Northern District of Illinois rejected that argument, first noting that publication is "an essential element of a cause of action for libel or slander" that is satisfied by the communication of the defamatory statements to any third person, including " 'the defendant's own agent, employee or officer, even when the defendant is a corporation.' " *Jones*, 622 F. Supp. at 391, quoting W. Keeton, Prosser & Keeton on Torts § 113, at 798 (5th ed. 1984). In so doing, the court specifically rejected the nonpublication rule as set forth in *Prins*, as confusing the issues of publication and privilege. *Jones*, 622 F. Supp. at 391, citing W. Keeton, Prosser & Keeton on Torts § 113, at 799 (5th

---

[1]Defendants also claim that this court need not choose between the authorities applying a blanket nonpublication rule and those taking a narrower approach by restricting nonpublication to communication made in the course of employment between employees with a "need to know." Although defendants claim the communications here satisfy either approach, the distinction they raise is not relevant to our disposition.

ed. 1984). The court found that "communication to any third party satisfies the Illinois publication requirement" and that, with the exception of one letter (to the plaintiff's attorney), all of the statements at issue were published for purposes of establishing the element for the defamation action. *Jones*, 622 F. Supp. at 391-92.

The same rationale was applied in *Gibson v. Philip Morris, Inc.*, 292 Ill. App. 3d 267 (1997), where the plaintiff brought a defamation action against his former corporate employer and its agents based on statements made by other employees relating to his discharge. There, the plaintiff was fired for, among other things, selling company property based on three employees' statements that they saw company incentive items offered for sale at a yard sale at the plaintiff's home. The plaintiff's supervisor requested that the three employees make written statements, which he included in a written report to the human resources director about his investigation of the plaintiff's infractions. The court ruled for the plaintiff on his defamation claim and awarded him punitive damages.

The corporate defendant in *Gibson* asserted, like defendants here, that there was no publication of the statements because communication of the interoffice reports was only the corporation talking to itself. *Gibson*, 292 Ill. App. 3d at 274. In rejecting the defendant's argument, the *Gibson* court discussed two cases (*Harrel v. Dillards Department Stores, Inc.*, 268 Ill. App. 3d 537, 644 N.E.2d 448 (1994); *Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center*, 137 Ill. App. 3d 294 (1985)) that involved internal corporate communications but concluded there was "no statement of law in Illinois that corporate internal communications are not publications." *Gibson*, 292 Ill. App. 3d at 275. The court then considered the question of publication in conjunction with the issue of privilege and ultimately found that there was publication of the statements at issue. *Gibson*, 292 Ill. App. 3d at 276.

Defendants attempt to distinguish *Gibson* on the basis that the communication of defamatory material there was not made in the regular course of business. They claim that, based on the *Gibson* court's discussion of *Harrel* and *Beauvoir*, Illinois would follow the nonpublication rule if the intracorporate communication is made in the regular course of business. We reject such a reading of *Gibson*.

The *Gibson* court first stated that it found "no clear statement of law in Illinois that interoffice communication within a corporation is not a publication." *Gibson*, 292 Ill. App. 3d at 274. After examining "references" in *Harrel* and *Beauvoir* that might suggest otherwise, the court reiterated that it found no basis for applying the nonpublication rule. In fact, the *Gibson* court acknowledged that the court in

*Harrel* specifically declined to address the question of publication (*Gibson*, 292 Ill. App. 3d at 274-75 (citing *Harrel*, 268 Ill. App. 3d at 543 ("we will leave the question open for a future decision of whether defamatory statements or opinions made among an investigatory group should be considered a publication"))) and that the discussion of publication in *Beauvoir* arose in the context of a qualified privilege (*Gibson*, 292 Ill. App. 3d at 275, citing *Beauvoir*, 137 Ill. App. 3d at 302). It was also in the context of discussing the abuse of a qualified privilege there that the *Gibson* court noted the communication of the defamatory material did not come about in the regular course of business. *Gibson*, 292 Ill. App. 3d at 276-77.

▮ As the *Gibson* court explained, a qualified privilege exists where a communication that might otherwise be actionable is not actionable due to the occasion on which or the circumstances under which it was made. *Gibson*, 292 Ill. App. 3d at 275. See also *Achanzar v. Ravenswood Hospital*, 326 Ill. App. 3d 944, 948, 762 N.E.2d 538 (2001) (existence of privilege). Privileged occasions include situations that involve some interest of the party publishing the statement, such as a corporate employer investigating certain conduct by its employees. *Gibson*, 292 Ill. App. 3d at 275; *Jones*, 622 F. Supp. at 392. A corporation has an unquestionable interest in investigating and correcting a situation where one of its employees may be engaged in suspicious conduct within the company. *Jones*, 622 F. Supp. at 392. Thus, a qualified privilege exists for communication made concerning such investigation. *Gibson*, 292 Ill. App. 3d at 276; *Jones*, 622 F. Supp. at 392.

However, even on such occasion, the communication may still be actionable if the privilege is abused, *i.e.*, if there is a direct intention to injure the plaintiff or a reckless disregard of the plaintiff's rights. *Gibson*, 292 Ill. App. 3d at 275. The *Gibson* court concluded that the defendant corporation made an improper and incomplete investigation of the truth of the matter, thus acting with actual malice toward the plaintiff and abusing its qualified privilege. *Gibson*, 292 Ill. App. 3d at 276. It was in reaching that conclusion that the court noted the written statements at issue did not come about during the normal course of business, but found, rather, that the circumstances, including the timing of the reports, indicated malicious intent on the defendant's part. *Gibson*, 292 Ill. App. 3d at 276-77.

We believe defendants' argument about the evaluation and disciplinary process confuses issues of publication and privilege. The element of publication is satisfied, even within a corporate environment, where the communication is made to any third party. *Jones*, 622 F. Supp. at 391. Therefore, the sending of the termination memo satis-

fied the element of publication here. The fact that the memo was published in the course of an evaluation and disciplinary process implicates instead questions of the existence of a privilege (see *Achanzar*, 326 Ill. App. 3d at 948) and the abuse of such privilege (see *Gibson*, 292 Ill. App. 3d at 275).

In urging application of the nonpublication rule, defendants express concern that there would be inadequate protection for corporate employer defendants without it. They claim that corporations would be inordinately exposed to liability for relying on reports of supervisors in making evaluations or disciplining an employee. Such concerns, however, have previously been addressed by courts considering the nonpublication rule. See *Hagebak*, 133 N.M. at 79, 61 P.3d at 205 (acknowledging public policy concerns including the need for corporations to communicate internally in a free and candid manner, without the chilling effect of possible liability concerns); see also *Lovelace v. Long John Silver's, Inc.*, 841 S.W.2d 682, 685 (Mo. App. 1992).

■ While acknowledging competing policy concerns, courts that have rejected the nonpublication rule have concluded that the qualified privilege adequately protects the corporation from unwarranted defamation liability. *Hagebak*, 133 N.M. at 79-80, 61 P.3d at 205-06. Accord *Bals v. Verduzco*, 600 N.E.2d 1353, 1356-57 (Ind. 1992); *Luttrell v. United Telephone System, Inc.*, 9 Kan. App. 2d 620, 621-22, 683 P.2d 1292, 1293-94 (1984); *Pirre v. Printing Developments, Inc.*, 468 F. Supp. 1028, 1042 (S.D.N.Y. 1979). Under this approach, privilege is treated as a defense rather than an absolute bar to all defamation actions against corporations. *Hagebak*, 133 N.M. at 79-80, 61 P.3d at 205-06; see *Luttrell*, 9 Kan. App. 2d at 623, 683 P.2d at 1294 ("We see no reason for greater freedom from liability for defamation to be accorded the corporate employer than that already available to all employers through the qualified privilege"). A corporate employer defendant first bears the burden of proving that a qualified privilege exists which a plaintiff may overcome only by showing it was abused. See *Jones*, 622 F. Supp. at 392-93; *Bals*, 600 N.E.2d at 1356-57. See also *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 29-30, 662 A.2d 89, 103-04 (1995); *Bacon v. Michigan Central R.R. Co.*, 55 Mich. 224, 227, 21 N.W. 324, 325 (1884).

We believe this approach properly balances competing interests rather than granting what would amount to an absolute privilege for corporations against all defamation actions. See *Hagebak*, 133 N.M. at 79, 61 P.3d at 205. Moreover, this position is in accord with the Restatement (Second) of Torts, which provides that "[t]he communication within the scope of his employment by one agent to another agent of

the same principal is a publication not only by the first agent but also by the principal and this is true whether the principal is an individual, a partnership or a corporation." Restatement (Second) of Torts § 577, Comment *i*, at 204, (1977). Thus, it is also consonant with Illinois defamation law adopting the approach taken by the Restatement (Second) of Torts concerning determinations of the existence of a conditional privilege. See *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill. 2d 16, 27-28, 619 N.E.2d 129 (1993); *Achanzar*, 326 Ill. App. 3d at 948.

■ Finally, defendants assert that the judgment against Tefft and Izzo for tortious interference with prospective business advantage must be vacated because such theory of liability requires a legally cognizable publication, which they again claim was lacking here. Because, as we have determined, the termination memo was such publication, this argument fails.

## II

■ Defendants also contend that the court abused its discretion by granting plaintiff's motion *in limine*, barring them from introducing evidence of plaintiff's status as an at-will employee. They assert the ruling was reversible error because, as a result, they were denied the opportunity to explain to the jury the "critical implications" of plaintiff's at-will status—*i.e.*, that an at-will employee may be discharged for any reason—and thus were unable to sufficiently attack plaintiff's argument that his discharge was unfair.

The court's ruling on a motion *in limine* is reviewed under an abuse of discretion standard. See, *e.g.*, *People v. Owen*, 299 Ill. App. 3d 818, 823, 701 N.E.2d 1174 (1998) (ruling on motion *in limine* is within court's discretion and will not be reversed on review absent clear abuse of discretion). We would find an abuse of discretion only if the court acted arbitrarily without the employment of conscientious judgment, exceeded the bounds of reason and ignored recognized principles of law (see *Zurich Insurance Co. v. Raymark Industries, Inc.*, 213 Ill. App. 3d 591, 594-95, 572 N.E.2d 1119 (1991)) or if no reasonable person would take the position adopted by the court (see *Vaughn v. Northwestern Memorial Hospital*, 210 Ill. App. 3d 253, 259, 569 N.E.2d 77 (1991)). There was no such abuse of discretion here. Plaintiff did not dispute his status as an at-will employee. Rather, the issue was not relevant to the question of whether plaintiff had been defamed. Therefore, the court properly ruled on plaintiff's motion.

## CONCLUSION

For the above-stated reasons, we affirm the judgment of the circuit court.

Affirmed.

McNULTY and O'MARA FROSSARD, JJ., concur.