# Illinois Official Reports

## Supreme Court

<div style="border:1px solid black">

### *Project44, Inc. v. FourKites, Inc.*, 2024 IL 129227

</div>

| | |
|---|---|
| Caption in Supreme Court: | PROJECT44, INC., Appellee, v. FOURKITES, INC., Appellant. |
| Docket No. | 129227 |
| Filed | March 21, 2024 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. James E. Snyder, Judge, presiding. |
| Judgment | Appellate court judgment affirmed.<br>Circuit court judgment reversed.<br>Cause remanded. |
| Counsel on Appeal | Scott Gilbert and Adam Weiss, of Polsinelli PC, of Chicago, for appellant.<br><br>Douglas A. Albritton and Peter G. Hawkins, of Actuate Law, LLC, of Chicago, for appellee. |

Justices            JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1      In filing suit for defamation *per se*, project44, Inc.[1] (project44), alleged that agents of FourKites, Inc. (FourKites), sent defamatory e-mails to project44's chief revenue officer (CRO) and two members of its board of directors. FourKites responded that there was no publication to a third party because the e-mails were sent to members of the corporation who were, in effect, the corporation itself. The Cook County circuit court agreed with FourKites and granted its motion to dismiss project44's complaint for failure to state a claim. On appeal, the appellate court reversed the circuit court and remanded the cause for further proceedings. For the following reasons, we affirm the decision of the appellate court holding that there is publication to a third party when an allegedly defamatory statement is communicated to a member of a corporation's executive leadership team.

¶ 2                             I. BACKGROUND

¶ 3      FourKites and project44 are competitors in the shipping logistics industry. Both entities are incorporated in Delaware but have their principal places of business in Chicago. The dispute between the parties arises from two separate e-mails sent to Tim Betrand, project44's CRO, and Jim Baum and Kevin Dietsel, both nonemployee members of project44's outside board of directors. In the e-mail to Baum and Dietsel, the sender, "Ken Adams," wrote that he was previously employed by project44 and was aware of "rampant accounting improprieties" at project44. Adams wrote that project44 employees were silenced with legal threats and defamation suits and that project44 was using an executive's family member's affiliation with the Chicago mafia to silence people. Adams encouraged the board members to look at various project44 contracts and contact a recently departed chief financial officer for more information. Adams concluded by warning that there was "widespread discontent brewing and it [was] just a matter of time before people [went] public and another Theranos[2] happen[ed] in Chicago."

¶ 4      The e-mail sent to the CRO was sent from an e-mail address belonging to a person identified as "Jason Short." Short congratulated Betrand on joining project44 but then told him that he should flee as soon as possible and find another job. Referencing a message Betrand sent about joining project44, Short stated, "You mention about people, investors etc in your

---

[1]We adhere to project44's preference of not capitalizing its name.

[2]According to project44's complaint, the Theranos reference was presumably to Theranos, Inc., a health technology company whose founder, Elizabeth Holmes, and president, Ramesh Balwani, falsely claimed that they had created a revolutionary blood-testing technology. Holmes and Balwani were later convicted of various counts of wire fraud and conspiracy to commit wire fraud after defrauding investors of millions of dollars, as well as defrauding consumers who used the unreliable technology. See *United States v. Holmes*, No. 5:18-cr-00258 EJD, 2023 WL 3489320, at *1 (N.D. Cal. May 16, 2023).

email. There is one ingredient you missed—a great product. At some point you have to stop selling s\*\* and start delivering." Short warned that Betrand did not "want to be part of the next Ponzi scheme or the next [T]heranos." Short suggested several people Betrand could speak to in order to get the truth but warned that, if Betrand forwarded the e-mail to "broker Jett" and moved on, he would be making a mistake. Short concluded the e-mail by wishing Betrand the best because he seemed like a nice guy who deserved better and signed off as "Friend."

¶ 5 Because the Adams and Short e-mails were from Gmail accounts, project44 began its investigation into the source of the e-mails by filing a petition for discovery pursuant to Illinois Supreme Court Rule 224(a) (eff. Jan. 1, 2018) naming Google, LLC (Google)—a company that hosts and manages Gmail accounts—as the respondent. The petition sought the Internet protocol (IP) address of the devices used to send the Adams and Short e-mails in order to identify the individuals who sent the e-mails. According to project44, "Ken Adams" and "Jason Short" appeared to be aliases, as it had no previous employees bearing those names. The circuit court entered an agreed order regarding production of the account information project44 sought. Google indicated it would provide the requested information if project44 obtained a subpoena in the Superior Court of Santa Clara County, California. Project44 obtained the necessary subpoena, and according to the complaint, Google provided documents indicating the Adams and Short e-mails were sent by individuals associated with FourKites.

¶ 6 The information from Google also identified a series of IP addresses registered to AT&T Mobility, LLC (AT&T), and Mimecast North America, Inc. (Mimecast). Project44 filed a petition for discovery pursuant to Illinois Supreme Court Rule 224(a) (eff. Jan. 1, 2018) naming AT&T and Mimecast as respondents. As with the Google petition, project44 filed this petition to identify the individuals behind the Adams and Short e-mail addresses. AT&T sent notice to the customer who presumably would have been identified through the IP address, so that the customer could object to the disclosure of identifying information if the customer wanted to do so. Thereafter, Jane Doe, a third-party movant appearing under a fictitious name, filed a petition for intervention asking the circuit court to deny project44's petition for discovery.

¶ 7 While litigation regarding the AT&T petition for discovery was pending,[3] project44 filed a complaint against FourKites and several additional defendants, identified as John Doe and Jane Doe, alleging defamation *per se* and a conspiracy to commit defamation. Based on the information it received in its investigation into the source of the e-mail addresses, project44 alleged that FourKites and the Doe defendants conspired with each other in making defamatory statements in the Adams and Short e-mails. The complaint alleged the defendants entered the scheme with the goal of harming project44's business reputation and, as a result, project44 suffered presumed damages in the form of impairment of its business reputation and standing in the community.

¶ 8 In the complaint, project44 alleged that the statements in the Adams e-mail were defamatory *per se* because they imputed the commission of crimes by project44, "a want of integrity in project44's business conduct, and a lack of ability in project44's business." Specifically, the e-mail alleged project44 had connections with organized crime and implied that project44 used these connections to "silence folks" through threats of violence or other

_____

[3]Project44 filed the complaint while the litigation was pending because it did not anticipate a decision before the statute of limitations ran on its defamation claim. See 735 ILCS 5/13-201 (West 2020).

intimidation. Comparing project44 to Theranos further conveyed the impression that project44 had engaged in fraud. The e-mail also imputed a lack of integrity in project44's business by accusing it of "rampant accounting improprieties." The e-mail's reference to a cancelled contract imputed a lack of ability in project44's business ability. Finally, project44 alleged that, since the Adams e-mail was sent to e-mail addresses belonging to members of project44's board of directors, it was published to one or more third parties without privilege.

¶ 9 Similarly, project44 alleged the Short e-mail was defamatory *per se* because it falsely implied project44 had committed one or more crimes. Specifically, project44 alleged the e-mail's reference to Theranos and its accusation that project44 was a "Ponzi scheme" were statements accusing project44 of engaging in criminal conduct. Project44 alleged that the Short e-mail was published because it was sent to the CRO, a third party, without privilege.

¶ 10 FourKites filed a motion to dismiss project44's complaint pursuant to section 2-615 of the Code of Civil Procedure (Code). 735 ILCS 5/2-615 (West 2020). FourKites argued that project44 failed to state a defamation claim because, first, there was no third-party publication of the allegedly defamatory statements. According to FourKites, because both e-mails were sent to members of project44 who had the authority to bind the corporation and through whom the corporation acted, communication to them was, in effect, communication to project44. Second, FourKites argued that the statements at issue were not defamatory *per se* because they did not impute the commission of a crime, project44's inability to perform professionally, or its lack of integrity. FourKites also argued the statements were not defamatory because they were too vague, too imprecise, and expressions of opinion, not verifiable fact.

¶ 11 Following additional written and oral arguments by the parties in support of their positions, the circuit court entered an order granting FourKites' motion to dismiss. The court first found that, "as a matter of law," the statements made to the CRO and the members of the board of directors were not published to a third party. The court then found the statements in the e-mails were actionable and that a jury could find the statements were defamatory. The court dismissed, with prejudice, project44's counts I and II alleging defamation *per se* and count III alleging civil conspiracy. The court further dismissed project44's subpoena to AT&T as moot.

¶ 12 Project44 appealed, arguing the circuit court erred in finding the statements in the e-mails were not published to third parties. The appellate court found the issue of whether there was publication when defamatory communication was sent to corporate employees from a person outside the corporation was a question of first impression. 2022 IL App (1st) 210575, ¶ 25. To resolve the issue, the court looked to the " 'intracorporate publication' " rule for guidance. *Id.* ¶¶ 26-27. The court found the rule generally applies when employees are terminated based on defamatory comments made by management or coworkers within a corporation and subsequently files a defamation action against the corporation. *Id.* ¶ 28. The court held that in "Illinois, the corporation that is named as the defendant in such an action cannot claim a lack of publication—it cannot defeat the lawsuit by claiming that the interoffice statements were merely 'the corporation talking to itself.' " *Id.* (quoting *Popko v. Continental Casualty Co.*, 355 Ill. App. 3d 257, 263 (2005)). Under the intracorporate publication rule, each employee has a reputational interest within the company that deserves protection. *Id.* ¶ 30. The appellate court concluded that, since Illinois followed this approach, the same rationale should apply when communication to corporate employees came from outside the corporation. *Id.* ¶ 32.

¶ 13    The court explained that "[a] corporation is not only concerned with its reputation to the outside world. Just as employees care about their reputation within the corporation, the corporation cares about its reputation among its own employees—be they high-ranking executives, lower-level workers, or nonemployee directors." *Id.* The court thus concluded that, by alleging the transmission of defamatory messages about project44 to directors and an officer of project44, the complaint adequately alleged publication. *Id.* ¶ 35. The appellate court reversed the judgment of the circuit court dismissing the complaint and remanded the case for further proceedings. *Id.* ¶¶ 54, 56.

¶ 14    We granted FourKites' petition for leave to appeal pursuant to Illinois Supreme Court Rule 315(a) (eff. Oct. 1, 2020).

¶ 15                                    II. ANALYSIS

¶ 16    Before this court, FourKites argues that project44 did not properly allege publication of the Adams and Short e-mails because the members of project44's executive leadership who received the e-mails were not third parties and were, in effect, "the human embodiment" of project44. In response, project44 maintains its argument that a corporation has its own reputation to protect that is separate from its employees and, as a result, its complaint properly alleged that sending defamatory statements to its employees resulted in publication to third parties.

¶ 17                              A. Standard of Review

¶ 18    The circuit court dismissed project44's complaint pursuant to a motion for dismissal under section 2-615 of the Code. 735 ILCS 5/2-615 (West 2020). A section 2-615 motion tests the legal sufficiency of the plaintiff's complaint, asking whether the allegations in the complaint, construed in the light most favorable to the plaintiff, state sufficient facts to establish a cause of action upon which relief may be granted. *Dent v. Constellation NewEnergy, Inc.*, 2022 IL 126795, ¶ 25. A complaint should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Id.* We review *de novo* the circuit court's order granting a motion to dismiss pursuant to section 2-615. *Id.*

¶ 19                      B. Defamation and Publication to Third Parties

¶ 20    Generally, to state a claim for defamation, a petitioner must allege sufficient facts showing that (1) the defendant made a false statement about the plaintiff, (2) the defendant made an unprivileged publication of that statement to a third party, and (3) the publication caused damages. *Id.* ¶ 26. Here, project44 alleged defamation *per se*. In Illinois, there are five categories of statements that are considered defamatory *per se*, including, as relevant here, statements that impute a person has committed a crime, is unable to perform or lacks integrity in performing her or his employment duties, or lacks ability or otherwise prejudices that person in her or his profession. See *Green v. Rogers*, 234 Ill. 2d 478, 491-92 (2009). A statement is defamatory *per se* if its harm is obvious and apparent on its face. *Hadley v. Doe*, 2015 IL 118000, ¶ 30. If a defamatory statement is actionable *per se*, the plaintiff need not plead or prove actual damages to recover. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 87 (1996). FourKites did not appeal the circuit court's finding that the statements at issue were

actionable; as a result, the primary issue in this appeal is whether the Adams and Short e-mails were published to third parties for purposes of establishing a claim for defamation.

¶ 21 The word "publication" is a term of art referring to the intentional or negligent communication of the allegedly defamatory statement to a third party, that is, a person other than the person who is allegedly defamed. Restatement (Second) of Torts § 577 cmt. a (1977); William W. Prosser, Handbook of the Law of Torts § 113, at 766 (4th ed. 1971) ("[I]t is essential to tort liability *** that the defamation be communicated to some one other than the person defamed."). Publication of a defamatory statement to the plaintiff alone is insufficient to state a cause of action for defamation. Prosser, *supra*, at 766. This is the cornerstone of FourKites' argument—that, because the Adams and Short e-mails were sent to senior agents of project44, they were only published to project44 itself.

¶ 22 FourKites argues that the appellate court's approach, finding there was publication when communication was to project44's leadership-level employees, fails to recognize that a corporation can only act through its agents. See *Small v. Sussman*, 306 Ill. App. 3d 639, 646 (1999) ("Corporations can only act through their agents."). FourKites likens the leadership-level employees of a corporation to puppeteers and the corporation their puppet. Under such a relationship, a statement to the puppeteer is a statement to the puppet. FourKites' argument has found favor in at least one jurisdiction, which finds there is no publication when a defamatory statement is sent to a corporate employee from someone outside the corporation. See *Hoch v. Loren*, 273 So. 3d 56, 58 (Fla. Dist. Ct. App. 2019). Jurisdictions that follow this approach, and also find there is no publication when defamatory communication is sent between corporate employees, do so based on the agency relationship between the management-level employees and the corporation. *Id.* Because of this agency relationship, these jurisdictions find the interests of the management-level employees are intertwined or unified with those of the corporation such that they are one for purposes of defamation actions. *Id.*

¶ 23 However, as the appellate court noted, Illinois courts have recognized that an employee of a corporation can be a third party for purposes of finding a defamatory statement was published. See, *e.g.*, *Popko*, 355 Ill. App. 3d at 262. Under the "intracorporate publication" rule, "interoffice reports or communications that are circulated among employees within a corporation have been 'published' to 'third parties' for defamation purposes." 2022 IL App (1st) 210575, ¶ 27. Therefore, in an action arising from defamatory communications between managers within a corporation, the defendant corporation cannot claim that the interoffice statements were merely the corporation talking to itself. *Id.* ¶ 28. While the situation in this case involves communication from outside the corporation, we agree with the appellate court that the intracorporate publication rule provides some guidance because it addresses the relationships between corporate employees and their employer corporations.

¶ 24 As the intracorporate publication rule recognizes, the managers and employees of a corporation can have separate identities from the corporation itself when determining if publication occurred. See *Biber v. Duplicator Sales & Service, Inc.*, 155 S.W.3d 732, 736 (Ky. Ct. App. 2004) (" 'Although corporate officers might be the embodiment of the corporation . . . they remain individuals with distinct personalities and opinions which might be affected just as surely as those of other employees by the spread of injurious falsehoods.' " (quoting *Bals v. Verduzco*, 600 N.E.2d 1353, 1355 (Ind. 1992))). This is consistent with section 577 of the Restatement (Second) of Torts, which states,

"The fact that the defamatory matter is communicated to an agent of the defamer does not prevent it from being a publication sufficient to constitute actionable defamation. The publication may be privileged, however, under the rule stated in § 593. *So too, the communication to a servant or agent of the person defamed is a publication* although if the communication is in answer to a letter or a request from the other or his agent, the publication may not be actionable in defamation." (Emphasis added.) Restatement (Second) of Torts § 577 cmt. E, at 203 (1977).

¶ 25    We agree with this approach, which is adopted by a majority of jurisdictions that have addressed the issue. See 3 Rodney A. Smolla, Law of Defamation § 15:9 (2d ed. Nov. 2022 Update) (collecting cases); *Wallulis v. Dymowski*, 918 P.2d 755, 760 (Or. 1996) (*en banc*) (collecting cases and holding that "The legal fiction created by the intracorporate nonpublication rule is inconsistent with the purpose for which the common law recognizes defamation claims. An individual's interest in maintaining a good reputation in the business community to which the individual belongs is not modified by the individual's relationship to the defamer."); *Duste v. Chevron Products Co.*, 738 F. Supp. 2d 1027, 1042 (N.D. Cal. 2010) (finding California law considers internal corporate statements about an employee to be published for purposes of a slander claim). These cases acknowledge that management-level employees have their own separate interests from the corporation as to be third parties for purposes of the publication in intracorporate communication cases. This rationale applies equally when communications are sent to managerial employees from a party outside the corporation. See *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 528 (2d Cir. 2018) (finding New York adheres to the view that communication to an agent of the defamed party constitutes publication).

¶ 26    We find that a corporation has a distinct reputation from that of its management-level employees and an interest in protecting that reputation among its employees and the public at large. Therefore, defamatory statements made to corporate employees, even those with the power to act on behalf of the corporation, can harm the corporation's business reputation among those employees. Communication of a defamatory statement regarding the corporation to these employees establishes the publication element for a defamation action brought by the corporation against the party that publishes the statement. Here, the Adams and Short e-mails were communicated to an employee of project44 and members of its board of directors, who were arguably agents of the corporation but were nonetheless distinct from the corporation itself. We find project44 properly alleged there was publication of the e-mails to third parties for purposes of pleading a cause of action for defamation.

¶ 27    FourKites argues that this approach eliminates the consideration of reputational harm in considering a defamation claim involving corporate parties. However, in this case, project44 filed a defamation action alleging defamation *per se*. As such, if a defamatory statement is actionable *per se*, the plaintiff need not plead or prove actual damage to his or her reputation to recover for a statement that is actionable *per se*. *Van Horne v. Muller*, 185 Ill. 2d 299, 307 (1998). In situations where the corporate plaintiffs file a claim of defamation *per quod*, the plaintiff would still need to prove reputational harm in order to recover damages. *Tuite v. Corbitt*, 224 Ill. 2d 490, 501 (2006) ("In a defamation *per quod* action, damage to the plaintiff's reputation is not presumed. Rather, the plaintiff must plead and prove special damages to recover.").

¶ 28        Finally, FourKites argues that, in holding that there is publication when an allegedly defamatory statement is sent to an agent of a corporation but that a privilege may apply to shield the sender of the statement from liability, the appellate court did away with the publication element altogether. This is not so. Qualified privilege remains a defense against a defamation action. See *Dent*, 2022 IL 126795, ¶ 30. The question of whether privilege applied would arise after the plaintiff established the elements of a defamation claim, including publication. We need not address the application of this defense at this point, as we reverse the judgment of the circuit court and remand the cause for further proceedings.

¶ 29                                    III. CONCLUSION

¶ 30        For the foregoing reasons, we hold that the circuit court erred in dismissing project44's complaint pursuant to section 2-615 of the Code. Therefore, we affirm the judgment of the appellate court reversing the judgment of the circuit court and remanding the cause to the circuit court for further proceedings.

¶ 31        Appellate court judgment affirmed.
¶ 32        Circuit court judgment reversed.
¶ 33        Cause remanded.