**2022 IL 126795**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 126795)

RICHARD L. DENT *et al.*, Appellees, v. CONSTELLATION NEWENERGY, INC., *et al.*, Appellants.

*Opinion filed April 21, 2022.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with opinion.

Justices Theis, Overstreet, and Carter concurred in the judgment and opinion.

Justice Garman dissented, with opinion, joined by Justice Neville.

Chief Justice Anne M. Burke took no part in the decision.

**OPINION**

¶ 1     Petitioners, Richard L. Dent and RLD Resources, LLC (RLD), filed an Illinois Supreme Court Rule 224 (eff. Jan. 1, 2018) petition seeking disclosure from

respondents, Constellation NewEnergy, Inc.; CNE Gas Supply, LLC; Constellation Energy Gas Choice, LLC; and Constellation NewEnergy-Gas Division, LLC. Petitioners sought the names and addresses of three unidentified individuals who might be responsible in damages to petitioners, alleging that those individuals publicized false and defamatory statements about Dent that caused respondents to terminate their contractual relationships with petitioners. The Cook County circuit court dismissed the petition with prejudice. The Appellate Court, First District, reversed and remanded. 2020 IL App (1st) 191652.

¶ 2                                BACKGROUND

¶ 3        Petitioners were party to several energy supply and marketing contracts with respondents. Petitioners were independent contractors, and the contracts were terminable at will. On October 18, 2018, respondents informed petitioners that it was terminating the at-will consulting agreements with petitioners.

¶ 4        On March 18, 2019, petitioners filed a verified petition under Rule 224. The petition alleged as follows. On September 14, 2018, Grace Speights and Theo McKinney III, two attorneys representing respondents, visited Dent at RLD's offices. The attorneys told Dent that certain allegations had been made against him. The allegations arose from a Senior-Pro Tour golf outing sponsored by respondents in July 2018. Dent was a guest at a pregolf party at the Shedd Aquarium in Chicago, Illinois. A woman at the event alleged that Dent groped her. The same woman also alleged that, at a similar event in Philadelphia, Pennsylvania, in June 2016, Dent told her she had "a butt like a sister." Dent asked who had made the allegations, but the attorneys refused to name her. Petitioners therefore identified the woman as "Person A."

¶ 5        The attorneys also told Dent that, at the same July 2018 golf outing, a gentleman observed Dent collecting his golf outing materials at the Marriott Hotel in Chicago. The gentleman described Dent as drunk and disorderly when picking up his materials. The attorneys refused to identify the gentleman, so the petition described him as "Person B."

¶ 6        At the September 14, 2018, meeting, Dent told the attorneys that the allegations against him were completely false. The attorneys informed Dent that respondents

would be reviewing their contractual arrangements with petitioners in light of the allegations. On or about October 1, 2018, petitioners received a letter from respondents terminating all contracts between petitioners and respondents going forward.

¶ 7        The Rule 224 petition also included exhibit B, a letter respondents' counsel sent to petitioners' counsel on December 19, 2018, responding to petitioners' claim that respondents had impugned Dent's name and reputation. The December 19, 2018, letter stated that Dent had been the subject of an investigation by a third party hired by respondents to investigate reports that Dent had engaged in "grossly inappropriate behavior during the 2016 and 2018 Pro-Am Tournament events." The letter stated that respondents' attorneys met with Dent to allow Dent to provide his recollection of the events in question. The letter noted that Dent had denied the allegations but that the investigators determined that Dent's denials were not credible and that the reports accurately described behaviors that were in violation of respondents' "code of business conduct, completely outside the norms of socially acceptable behavior, and demeaning to Constellation employees." The letter also stated that respondents had not disclosed the findings of the investigation to any third party, aside from privileged communications with respondents' attorneys. The letter concluded that any claim that respondents had impugned Dent's name and reputation was frivolous, given respondents' legal obligation to investigate the allegations and the protected nature of the findings of the investigation.

¶ 8        Petitioners' Rule 224 petition alleged that respondents refused to identify the third party hired to investigate the claims against Dent, so the petition referred to the third party as "Person C." The petition asserted that, on information and belief, Person C investigated the claims made against Dent prior to respondents' issuance of the October 1, 2018, termination notice. The petition also alleged that, on information and belief, Person C published or republished to respondents the statements of Person A and Person B concerning Dent.

¶ 9        The petition then alleged that the statements published by Persons A, B, and C were (1) made as statements of fact, (2) false, and (3) not privileged. The statements published by Persons A, B, and C imputed acts of moral turpitude and impugned Dent's character, reputation, and good name. Further, respondents admitted in the December 19, 2018, correspondence that the statements published by Persons A,

B, and C concerning Dent were both the cause in fact and the proximate cause of respondents' termination of all contractual relationships with petitioners. Petitioners alleged that Persons A, B, and C might be responsible in damages to them and that petitioners wished to engage in discovery for the sole purpose of ascertaining the identities and whereabouts of Persons A, B, and C. The discovery sought by petitioners was necessary because respondents refused to provide petitioners with the identities and addresses of Persons A, B, and C.

¶ 10　　　Respondents moved to dismiss the Rule 224 petition pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)). Respondents argued that the petition was substantially insufficient because the petition sought discovery in support of a prospective lawsuit for defamation but the allegedly defamatory statements were, as a matter of law, protected by qualified privilege. In addition, petitioners did not, and could not, allege facts sufficient to overcome that privilege. For that reason, the discovery sought by petitioners was not necessary to pursue a cognizable claim, as required under Rule 224.

¶ 11　　　The trial court dismissed the Rule 224 petition with prejudice. In issuing its ruling, the trial court *sua sponte* ruled that Rule 224 is satisfied when a petitioner has identified someone who may be sued. In this case, petitioners knew the identities of respondents and their attorneys, so petitioners had identified someone who may be sued. The trial court cited *Low Cost Movers, Inc. v. Craigslist, Inc.*, 2015 IL App (1st) 143955, in support of its ruling.

¶ 12　　　The court in *Low Cost Movers* held that a Rule 224 petition may be dismissed if the identity of a potential defendant is already known to the petitioner. *Id.* ¶ 16. The *Low Cost Movers* court explained that "Rule 224 is not intended to permit a party to engage in a wide-ranging, vague, and speculative quest to determine whether a cause of action actually exists." *Id.* ¶ 17. Nor could Rule 224 discovery continue "until the identity of the party that engaged in the 'wrongdoing' coincides with petitioner's causes of action." *Id.*

¶ 13　　　Based upon *Low Cost Movers*, the trial court stated that the respondents might be liable for damages to petitioners, so a Rule 224 petition was an inappropriate vehicle for petitioners to attempt to learn the names of other, unidentified individuals.

¶ 14 Petitioners filed a motion to reconsider the dismissal of their Rule 224 petition. Petitioners argued the trial court erred in finding that they knew the identity of a potential defendant. Petitioners noted that respondents were not the publishers of the allegedly defamatory statements about Dent. Rather, respondents were the third parties to whom Persons A, B, and C published their allegedly defamatory statements. Consequently, no cause of action for defamation could lie against respondents. In addition, no cause of action for breach of contract would lie against respondents because respondents could terminate at-will contracts for any reason. Consequently, any cause of action would lie solely against Persons A, B, and C. In contrast to the *Low Cost Movers* case, no one who engaged in the wrongful conduct alleged—the defamation of Dent—had been identified. The circuit court thus erred in dismissing the Rule 224 petition with prejudice.

¶ 15 The circuit court denied petitioners' motion to reconsider. The circuit court stated that claims against respondents were not limited to those elaborated upon in the underlying petition. Further, the damages alleged in the petition were based upon the termination of contracts. The circuit court characterized the issue before it as whether petitioners had identified any of the persons or entities who may be the cause of those terminations. The circuit court stated that "Rule 224 has a specific, narrow purpose that allows a petitioner to obtain the identity of a potential defendant when the petitioner lacks knowledge of *anyone* who *may* be liable in damages." (Emphases in original.) The circuit court concluded that petitioners had knowledge of an individual or entity that might be liable in damages to them and, thus, claims were available to petitioners whether petitioners pursued claims for defamation or otherwise.

¶ 16 The appellate court reversed and remanded. 2020 IL App (1st) 191652. The appellate court held that the circuit court abused its discretion when it *sua sponte* dismissed the petition with prejudice based upon its determination that petitioners knew the identity of respondents and their attorneys. *Id.* ¶ 28. The appellate court stated that, under the facts alleged by petitioners, respondents and their attorneys were not " 'individuals or entities who stand in the universe of potential defendants' responsible in damages for defamation or breach of contract." *Id.* (quoting *Beale v. EdgeMark Financial Corp.*, 279 Ill. App. 3d 242, 252 (1996)). Respondents were not the entity or individuals who made the allegedly false and defamatory statements about Dent's conduct. Respondents were merely participants in the

subsequent investigation of the allegedly defamatory statements that caused respondents to terminate petitioners' at-will contracts. *Id.* Petitioners met the requirements of Rule 224 in alleging that Persons A and B made false, defamatory statements about Dent and then published those statements to Person C and that Person C reported the defamatory statements to respondents, who then terminated its at-will contracts with petitioners. *Id.*

¶ 17 The appellate court then addressed the sufficiency of the Rule 224 petition. Petitioners argued that their Rule 224 petition sufficiently alleged all the required elements of a defamation claim against Persons A, B, and C. *Id.* ¶ 36. Petitioners noted that they alleged that the statements about Dent were defamatory because they imputed to Dent acts of moral turpitude and impugned his character, good name, and reputation; the statements were completely false, were made as statements of fact, and were not privileged; and the statements caused respondents to terminate several contracts with petitioners, who suffered damages as a result. *Id.*

¶ 18 Respondents denied that petitioners had stated a claim for defamation, so the discovery sought by petitioners was not necessary for purposes of Rule 224. *Id.* ¶ 38. Respondents claimed that the alleged defamatory statements were all qualifiedly privileged and that petitioners failed to overcome that privilege by pleading sufficient facts to demonstrate that the privilege was abused. *Id.* Respondents asserted that Person A's statements were qualifiedly privileged as statements by a victim of sexual harassment to an investigator hired by her employer. *Id.* Person B's statements were qualifiedly privileged because he was a witness in the sexual harassment investigation. Person B told the investigator his observations of Dent at the same July 2018 golf outing where one of the alleged incidents of harassment occurred. *Id.* The statements of Person C, the investigator hired by respondents, were qualifiedly privileged as relating to the findings of the sexual harassment investigation. *Id.*

¶ 19 In addressing respondents' argument, the appellate court first observed that, to determine whether petitioners satisfied Rule 224's necessity requirement, the court must evaluate whether petitioners presented sufficient allegations of a defamation claim to withstand a section 2-615 motion to dismiss. *Id.* ¶ 41. The appellate court concluded that the Rule 224 petition did present sufficient allegations of a

defamation claim to withstand a section 2-615 motion to dismiss. *Id.* ¶ 47. The appellate court then rejected respondents' claim that the allegedly defamatory statements were protected by a qualified privilege for statements made in the reporting and investigation of sexual harassment in the workplace. *Id.* ¶ 42. The appellate court held that the defense of qualified privilege is an affirmative defense, which should not be considered in resolving a section 2-615 motion to dismiss. *Id.* ¶ 44. For that reason, the appellate court reversed the circuit court's dismissal with prejudice of the Rule 224 petition. *Id.* ¶ 49.

¶ 20        This court subsequently allowed respondents' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). We also allowed a joint *amicus* brief in support of respondents' position by Women Employed, the American Civil Liberties Union of Illinois, the National Women's Law Center, and 28 additional organizations. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 21                                    ANALYSIS

¶ 22        The primary issue in this appeal is whether the appellate court erred in holding that a court cannot consider qualified privilege in resolving a section 2-615 motion to dismiss a Rule 224 petition.

¶ 23        Rule 224 provides a means to identify potential defendants prior to the commencement of a lawsuit. Ill. S. Ct. R. 224(a)(1)(i) (eff. Jan. 1, 2018). Rule 224 allows a party to initiate discovery by filing a verified petition. Ill. S. Ct. R. 224(a)(1)(ii) (eff. Jan. 1, 2018). The rule states that the

> "petition shall be brought in the name of the petitioner and shall name as respondents the persons or entities from whom discovery is sought and shall set forth: (A) the reason the proposed discovery is necessary and (B) the nature of the discovery sought and shall ask for an order authorizing the petitioner to obtain such discovery." *Id.*

An order allowing a Rule 224 petition "will limit discovery to the identification of responsible persons and entities." Ill. S. Ct. R. 224, Committee Comments (adopted Aug. 1, 1989).

¶ 24    Under Rule 224, the unidentified individual or entity does not bear the burden of demonstrating that the discovery request does not satisfy the rule. *Doe v. Catholic Diocese of Rockford*, 2015 IL App (2d) 140618, ¶ 16. The petitioner bears the burden of showing that his proposed complaint supports a cause of action, even if the unidentified individual or entity does not challenge the request. *Id.* Rule 224 is intended to assist a petitioner in identifying a currently unidentified party who might be liable. *Id.* In order to employ Rule 224, however, the petitioner must demonstrate that the proposed identification is necessary. *Id.*

¶ 25    To determine whether a petitioner has satisfied Rule 224's necessity requirement in a claim for defamation, a court must evaluate whether the petitioner presented sufficient allegations to overcome a section 2-615 motion to dismiss. *Hadley v. Doe*, 2015 IL 118000, ¶ 26. A section 2-615 motion tests the legal sufficiency of the complaint, asking whether the allegations of the complaint, construed in the light most favorable to the petitioner, state sufficient facts to establish a cause of action upon which relief may be granted. *Id.* ¶ 29. A court will consider all facts apparent from the face of the complaint, including any attached exhibits. *Id.* A complaint should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Id.* The standard of review is *de novo*. *Id.*

¶ 26    To state a claim for defamation, a plaintiff must allege facts showing that (1) the defendant made a false statement about the plaintiff, (2) the defendant made an unprivileged publication of that statement to a third party, and (3) the publication caused damages. *Id.* ¶ 30. As noted, respondents challenged petitioners' Rule 224 petition on the basis that the alleged defamatory statements were subject to qualified privilege and that petitioners failed to overcome that privilege by pleading sufficient facts to demonstrate abuse of that privilege. The appellate court declined to consider that argument, finding that "[p]rivilege is an affirmative defense that may be susceptible to resolution by a motion for summary judgment or a motion to dismiss under section 2-619 of the Code [citations], but privilege should not be considered when resolving a section 2-615 motion to dismiss." 2020 IL App (1st) 191652, ¶ 44. The appellate court thus held that petitioners' Rule 224 allegations were "sufficient to withstand dismissal under a section 2-615 analysis, which does not consider affirmative defenses like the alleged existence of a qualified privilege." *Id.* ¶ 47.

¶ 27	Respondents challenge the appellate court's finding in this court, arguing first that a defamation claim is subject to dismissal under section 2-615 when the petition pleads facts establishing a qualified privilege. In the alternative, respondents ask this court to find that a Rule 224 respondent may file a motion to dismiss under section 2-619 if affirmative matter is needed to establish the qualified privilege.

¶ 28	We need not consider respondents' argument concerning section 2-619, because we find that respondents can raise qualified privilege in their section 2-615 motion. As respondents argue, this court has held that an "affirmative *defense* may be raised in a section 2-615 motion where the defense is 'established by the facts apparent on the face of the complaint' and no other facts alleged in the complaint negate the defense. 3 R. Michael, Illinois Practice § 27.2, at 492 (1989)." (Emphasis in original.) *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 292 (2010). As stated, all facts apparent from the face of the complaint must be considered, including any attached exhibits. *Hadley*, 2015 IL 118000, ¶ 29.

¶ 29	Exhibit B to the Rule 224 petition is the letter from respondents' counsel to petitioners' counsel, dated December 19, 2018. That letter stated, in pertinent part:

"Mr. Dent has been the subject of an investigation conducted by a third-party hired by Constellation to investigate reports that Mr. Dent engaged in grossly inappropriate behavior during the 2016 and 2018 Pro-Am Tournament events where Mr. Dent was a guest of Constellation. The reports regarding Mr. Dent's behavior include among other things that Mr. Dent engaged in an inappropriate and unwanted touching of a Constellation employee and that Mr. Dent made unwelcome comments of a sexual nature to a Constellation employee. As you note in the PGN [(petitioners' counsel)] October Letter, on September 14, 2018, there was a meeting between Richard L. Dent, Grace Speights, Theos McKinney and Timothy W. Wright. That meeting was to allow Mr. Dent an opportunity to provide his recollection of the events described above. The law requires Constellation to investigate reports of such behavior and the EEOC directs employers to conduct effective investigations. Although Mr. Dent denied the allegations, his denials were not credible and the investigation concluded that the reports accurately described behaviors that were, at a minimum, in violation of Exelon's code of business conduct, completely outside the norms of socially acceptable behavior, and demeaning to

Constellation employees. To date, neither Exelon nor Constellation has disclosed the findings of the investigation to any third-party, other than in privileged communications with its lawyers. Given Constellation's legal obligation to investigate such allegations and the protected nature of its findings, any claim that Constellation has 'impugn[ed] Mr. Dent's … name and reputation' is frivolous."

¶ 30      Qualified privilege in Illinois defamation law is based on a policy of protecting honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information. *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill. 2d 16, 24 (1993). A privileged communication is one that might be defamatory and actionable except for the occasion on which, or the circumstances under which, it is made. *Id.* Qualified privilege enhances a defamation plaintiff's burden of proof. *Id.* In the absence of qualified privilege, a plaintiff need only show that the defendant acted with negligence in making the defamatory statements in order to prevail. *Id.* Once a defendant establishes a qualified privilege, however, a plaintiff must show " ' "a direct intention to injure another, or *** a reckless disregard of [the defamed party's] rights and of the consequences that may result to him." ' [Citation.]" *Id.* at 30. Stated otherwise, "an abuse of a qualified privilege may consist of any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties." *Id.*

¶ 31      This court has adopted the approach of the Restatement (Second) of Torts to determine whether a qualified privilege exists. *Id.* at 28-29. Under that approach, conditionally privileged occasions are divided into three classes. *Id.* at 29. Those classes are:

     " '(1) situations in which some interest of the person who publishes the defamatory matter is involved

     (2) situations in which some interest of the person to whom the matter is published or of some other third person is involved

(3) situations in which a recognized interest of the public is concerned.' (S. Harper, F. James & O. Gray, The Law of Torts § 5.25, at 216 (2d ed. 1986)." *Id.*

¶ 32    In addressing a claim of qualified privilege in the context of a defamation claim arising from allegations of sexual harassment, our appellate court has concluded that the three interests set forth above were implicated. *Vickers v. Abbott Laboratories*, 308 Ill. App. 3d 393, 402 (1999). The plaintiff in *Vickers* filed suit against Abbott Laboratories and certain employees alleging defamation and other claims, based upon an Abbott investigation into allegations that the plaintiff exhibited sexually harassing behavior. *Id.* at 395-96. The circuit court granted the defendants' motion for summary judgment and dismissed the plaintiff's suit with prejudice. *Id.* at 396. The plaintiff appealed, arguing, *inter alia*, that the circuit court erred in entering summary judgment on the plaintiff's claim for defamation because no qualified privilege existed and, if it did exist, the defendants abused it. *Id.*

¶ 33    The appellate court held that the communications at issue were conditionally privileged based upon the three interests. *Id.* at 402. First, the female defendants had an interest in stopping harassment and abuse by the plaintiff. *Id.* Second, the employer and its agents had an interest in investigating the employees' concerns and taking action to prevent further harassment. *Id.* Third, there was a definite general public interest in eradicating sexual harassment in the workplace. *Id.*

¶ 34    The *Vickers* court also noted that a United States Supreme Court case, *Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998), had made clear that there is a compelling interest in ridding workplaces of sexual harassment. *Id.* The *Faragher* Court noted that the Code of Federal Regulations specifically obliged employers to " 'take all steps necessary to prevent sexual harassment from occurring' " (*id.* (quoting 29 C.F.R. § 1604.11(f) (1997)) and "to establish a complaint procedure 'designed to encourage victims of harassment to come forward' " (*id.* (quoting Policy Guidance on Current Issues of Sexual Harassment, U.S. Equal Emp. Opportunity Comm'n (Mar. 19, 1990), https://www.eeoc.gov/laws/guidance/policy-guidance-current-issues-sexual-harassment [https://perma.cc/26TR-CWAN])). *Vickers* concluded that the qualified privilege in the defamation context promotes the social policy recognized in *Faragher* and "provides protection for the victims, witnesses and investigators of sexual harassment." *Vickers*, 308 Ill.

App. 3d at 402. *Vickers* explained that, if "no privilege existed, then victims of harassment and companies with a goal of preventing harassment would be 'handcuffed' by a fear of defamation liability." *Id.*

¶ 35    We agree with the *Vickers* court that a qualified privilege exists in cases alleging defamation in the context of workplace sexual harassment allegations. Petitioners' Rule 224 petition, including exhibit B to the petition, establishes that respondents hired Person C to investigate sexual harassment claims concerning Dent's behavior when Dent was respondents' guest at their 2016 and 2018 Pro-Am golf tournaments. Exhibit B states that the behavior included, "among other things," that Dent engaged in an "inappropriate and unwanted touching" of respondents' employee. Exhibit B also states that the law required respondents to "investigate reports of such behavior and the EEOC directs employers to conduct effective investigations." The statements of Persons A and B were part of Person C's investigation into those claims. We agree with respondents that the Rule 224 petition and exhibit B thus raise an affirmative defense of qualified privilege as to Persons A, B, and C, as the statements at issue were made in the context of respondents' investigation of Dent's alleged sexual harassment of respondents' employee.

¶ 36    Petitioners claim that no qualified privilege applied to Person B, however, because the Rule 224 petition does not allege that Person B was an employee of respondents or that Person B was a witness to any sexual harassment by Dent. The petition alleges only that Person B saw Dent acting "drunk and disorderly" at the Marriott Hotel. Further, exhibit B does not mention Person B at all.

¶ 37    Although there are no allegations that Person B witnessed any sexual harassment on the part of Dent, it is clear from the Rule 224 petition that Person B's statement was made as part of Person C's investigation of the allegations of sexual harassment. Further, although Person B's statements were not expressly referenced in exhibit B, exhibit B does state that Dent's behavior included, "among other things," that Dent engaged in sexual harassment. Person B's statements would fall within the "among other things" reference. In any event, because Person B's statements were made in connection with the investigation of the sexual harassment claims, those statements also fell within the qualified privilege surrounding that investigation. The qualified privilege protects the *investigation* of sexual

harassment claims. An investigation might cast a broad net in investigating and interviewing witnesses in order to gather information concerning those claims. Person B's report to Person C was made as part of Person C's investigation of the sexual harassment claims. Person B should not lose his privilege based solely upon the content of his report to the investigator. To hold otherwise might deter individuals from participating in investigations of sexual harassment. For that reason, we find that Person B, as well as Persons A and C, was protected by the qualified privilege for investigation of workplace sexual harassment claims.

¶ 38        As noted, once a party has demonstrated a qualified privilege, the plaintiff must show an abuse of that privilege, which consists of any reckless act showing a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties. Petitioners assert that their Rule 224 petition "states facts sufficient to show the actual malice" of Persons A and B and "overcame any qualified privilege pertaining" to Persons A and B. Petitioners note that their Rule 224 petition alleges that the statements of Person A and Person B "were completely false" and that the fact that Person A and Person B had knowledge of the falsity of her statements about Dent is obvious and incontrovertible from the face of the Rule 224 petition. According to petitioners, Dent's averment in the verified petition, that the statements published by Person A and Person B were false, defeats any qualified privilege.

¶ 39        We disagree. Allowing a conclusory denial to overcome qualified privilege would, in essence, eviscerate the privilege. The allegations of the petition, including exhibit B, fail to establish any reckless act showing a disregard for Dent's rights. Construing the allegations of the Rule 224 petition, including the attached exhibits, in the light most favorable to petitioner, we find that there is no set of facts which would show an abuse of the qualified privilege with regard to the statements of Persons A, B, and C. For that reason, we find that the appellate court erred in refusing to consider the affirmative defense of qualified privilege with regard to Persons A, B, and C. Because qualified privilege applied to the allegations against Persons A, B, and C, the appellate court erred in finding that the allegations in the Rule 224 petition were sufficient to withstand dismissal under a section 2-615 analysis.

¶ 40    The dissent disagrees that respondents can raise qualified privilege in their section 2-615 motion to dismiss. The dissent contends that, without the identity of the publisher, a Rule 224 petitioner cannot allege facts demonstrating that the publisher directly intended to injure him or acted with reckless disregard for the petitioner's rights and of the resulting consequences to the petitioner. The dissent states that the factual allegations necessary to overcome qualified privilege focus on the intent and actions of the publisher, which presuppose that the Rule 224 petitioner knows the identity of the publisher.

¶ 41    Under the circumstances of this case, however, petitioners did not need to know the identity of the publisher in order to allege facts sufficient to overcome qualified privilege. Exhibit B to the Rule 224 petition establishes that respondents' attorneys met with Dent on September 14, 2018, "to allow Mr. Dent an opportunity to provide his recollection of the events described" by Persons A and B. Although petitioners did not know the identity of Persons A and B, petitioners had enough information concerning the specific events and the circumstances described by Persons A and B to assert more than a bare allegation that the statements published by Persons A, B, and C were "false" and "not privileged." Petitioners had enough information to allege facts showing why those allegations were false, particularly given that the alleged conduct occurred at public events, with a large number of guests present.

¶ 42    The dissent also distinguishes the decision in *Hadley v. Doe* and the two appellate court cases that the *Hadley* court found persuasive—*Maxon v. Ottawa Publishing Co.*, 402 Ill. App. 3d 704 (2010), and *Stone v. Paddock Publications, Inc.*, 2011 IL App (1st) 093386. The dissent points out that *Hadley* and the appellate court decisions it relied upon involved anonymous speech that was argued to be constitutionally protected by the first amendment and did not involve qualified privilege. The dissent again maintains that the showings and concomitant factual allegations necessary to overcome qualified privilege in this case presuppose that the Rule 224 petitioner knows the identity of the publisher.

¶ 43    We do not find *Hadley*, *Maxon*, and *Stone* to be so limited. In fact, the *Stone* court expressly stated that, "[w]hile the *Maxon* court correctly found that this standard protects an anonymous individual's constitutional rights in the context of a defamation claim, we add *that the appropriateness of this standard is not limited to speech-based claims*." (Emphasis added.) 2011 IL App (1st) 093386, ¶ 18.

*Hadley* found the reasoning of the *Maxon* and *Stone* courts to be persuasive and thus held that, to "ascertain whether a petitioner has satisfied Rule 224's necessity requirement, the court must evaluate a defamation complaint to determine whether it will withstand a section 2-615 motion to dismiss." 2015 IL 118000, ¶ 27. We do not read *Hadley* as limiting its holding to first amendment defamation cases.

¶ 44    Finally, the dissent claims that our opinion effectively elevates what is supposed to be a qualified privilege into an absolute privilege, because "there is no realistic way for a Rule 224 petitioner to sufficiently allege that the publishers of the allegedly defamatory statements directly intended to injure him or acted with reckless disregard for the petitioner's rights and of the resulting consequences to the petitioner." *Infra* ¶ 70. The dissent states that Dent did not know his accuser, the witnesses, or the evidence against him. *Infra* ¶ 72.

¶ 45    This is incorrect. Although Dent did not know his accuser or the witness, Dent did know that he was accused of groping a woman at a large gathering on the patio of the Shedd Aquarium and that he was drunk and disorderly while picking up his golf materials at the Marriott Hotel. In petitioners' Rule 224 petition, they allege that Dent was one of a "large number" of guests at the events where the alleged conduct occurred. Nonetheless, Dent did not allege any facts showing that respondents failed to investigate the truth of the matter, for example, by interviewing other guests, nor did Dent allege that other guests at the event could verify that he was not drunk or disorderly and did not otherwise exhibit grossly inappropriate behavior. Under these circumstances, we find that petitioner's bare allegations that the statements of Person A and Person B "were completely false" is not sufficient to defeat the qualified privilege in this case.

¶ 46    In summary, then, we find that the appellate court erred in holding that a section 2-615 motion to dismiss cannot consider affirmative defenses apparent on the face of the petition, such as the existence of qualified privilege. We further find that the existence of qualified privilege on the part of Persons A, B, and C was apparent from the face of the petition and that respondents, having raised nothing more than a conclusory denial, failed to sufficiently allege an abuse of that privilege. For that reason, we find that the Rule 224 petition should be dismissed in its entirety based upon qualified privilege.

- 15 -

¶ 47                          CONCLUSION

¶ 48     For all the foregoing reasons, the judgment of the appellate court, which reversed the judgment of the circuit court, is reversed. The Rule 224 petition is dismissed with prejudice, pursuant to section 2-615.

¶ 49     Appellate court judgment reversed.

¶ 50     Circuit court judgment affirmed.

¶ 51     JUSTICE GARMAN, dissenting:

¶ 52     I respectfully dissent for the following reasons. First, I disagree that, in this context, respondents can raise qualified privilege in their motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)). Second, I believe that the majority erroneously accepts respondents' somewhat obscured representation that a qualified privilege protects not only statements but also identity. Finally, I am concerned that the majority opinion essentially treats the qualified privilege as an absolute privilege, which in turn endows a private company and its third-party investigators with quasi-judicial status and impermissibly deprives a class of individuals of the ability to restore their reputations following investigations that arguably lack procedural safeguards.

¶ 53     To begin, the majority opinion avoids a meaningful analysis of whether respondents can raise qualified privilege in their section 2-615 motion to dismiss. The majority simply concludes this is permissible where an affirmative defense is established by the facts apparent on the face of the complaint and where the defense is not negated by any other facts in the complaint. For this proposition the majority cites *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 292 (2010). See *supra* ¶ 28.

¶ 54     At issue in *McGinnis* was whether a home remodeling contractor who violated section 15 of the Home Repair and Remodeling Act (815 ILCS 513/15 (West 2006)) could nevertheless enforce an oral contract or recover in *quantum meruit* against a homeowner who refused to pay for a completed home remodeling project. *McGinnis*, 238 Ill. 2d at 286. Section 15 of that act stated that, " '[p]rior to initiating

- 16 -

home repair or remodeling work for over $1,000, a person engaged in the business of home repair or remodeling shall furnish to the customer for signature a written contract or work order.' " *Id.* (quoting 815 ILCS 513/15 (West 2006)). The complaint in part alleged that the plaintiff construction company entered into an oral contract with the defendants to complete a remodeling project for the sum of $187,000. *Id.* at 287. The defendants subsequently asked for modifications, which raised the cost of the project to roughly $500,000. *Id.* at 287-88. Ultimately, the defendants refused to pay a substantial amount, and the plaintiff filed a three-count complaint against the defendants. *Id.* at 288.

¶ 55         Relevant here, count II of the complaint alleged a breach of contract. *Id.* The defendants filed a section 2-615 motion to dismiss. *Id.* As to count II, defendants asserted that the oral contract between the parties was in violation of Illinois law, *i.e.*, section 15 of the Home Repair and Remodeling Act, and thus was not enforceable. *Id.* at 289. At the time plaintiff filed its complaint, section 15 additionally stated that it was " 'unlawful' " to engage in home remodeling prior to " 'obtaining a signed contract or work order over $1,000.' " *Id.* (quoting 815 ILCS 513/30 (West 2006)). The defendants observed that the complaint itself alleged that the contract was not in writing and was for work totaling over $1000. *Id.*

¶ 56         The *McGinnis* court first noted that "[a] section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face." *Id.* at 291 (citing *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009)). The plaintiff asserted that the motion to dismiss instead should have been brought under section 2-619(a)(9) because it raised an affirmative defense. *Id.* In response to this argument, the *McGinnis* court explained:

"section 2-619(a)(9) speaks in terms of affirmative *matter*, not affirmative *defenses*: 'If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit: *** (9) That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim.' 735 ILCS 5/2-619(a)(9) (West 2006). An affirmative *defense* may be raised in a section 2-615 motion where the defense is 'established by the facts apparent on the face of the complaint' and no other facts alleged in the complaint negate the defense." (Emphases in original.) *Id.*

at 291-92 (quoting 3 Richard A. Michael, Illinois Practice § 27.2, at 492 (1989)).

Critically, the *McGinnis* court explained that "the factual basis of defendants' affirmative defense is found in *plaintiff's own allegations that the remodeling contract was oral and was for work totaling more than $1,000*." (Emphasis added.) *Id.* at 292. Accordingly, the plaintiff's *own complaint* admitted facts that established the defendant's affirmative defense.[1]

¶ 57    Here, we have vastly different circumstances. Unlike in *McGinnis*, petitioners represent that they do not know the identities of the allegedly responsible parties— thus leading to petitioners filing the instant petition pursuant to Illinois Supreme Court Rule 224 (eff. Jan. 1, 2018). I do not disagree with the majority recognizing that statements made in the context of a workplace sexual harassment investigation are subject to a qualified privilege. However, as described in more detail below, I am troubled by the majority's lack of concern regarding how a party seeking to sue for defamation in this context is realistically expected to allege concrete facts to overcome the qualified privilege. Under the majority's holding, a Rule 224 petitioner—who does not know the identity of the publisher—must allege facts demonstrating that the publisher directly intended to injure him or acted with reckless disregard for the petitioner's rights and of the resulting consequences to the petitioner. See *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill. 2d 16, 30 (1993) (noting that "an abuse of a qualified privilege may consist of any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties"). Yet, in the Rule 224 context, " 'the focus is on identity and not on the determination of the responsibility of those identified.' " *Kamelgard v. American College of Surgeons*, 385 Ill. App. 3d 675, 685 (2008) (quoting *Roth v. St. Elizabeth's Hospital*, 241 Ill. App. 3d 407, 414 (1993)). However, the majority opinion necessarily requires petitioners to establish the responsibility of Persons A, B, and C.

---

[1]Respondents also cite several appellate court cases in support of their argument that an Illinois Supreme Court Rule 224 (eff. Jan. 1, 2018) petitioner must overcome the qualified privilege at issue. In every case, the defamation plaintiff knew the identities of the defendants. See *Pompa v. Swanson*, 2013 IL App (2d) 120911, ¶¶ 30-31; *Dobias v. Oak Park & River Forest High School District 200*, 2016 IL App (1st) 152205, ¶ 1; *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 1.

¶ 58 Here, not only do petitioners not know the identities of Persons A and B, but exhibit B to the Rule 224 petition—the letter from respondents' counsel to petitioners' counsel—states that "neither Exelon nor Constellation has disclosed the findings of the investigation to any third-party, other than in privileged communications with its lawyers." Though this statement goes to whether the publication was limited to the proper parties, it also demonstrates that the only context petitioners have for attempting to overcome the qualified privilege with factual allegations is petitioners' attendance at two presumably very large outings in 2016 and 2018. Exhibit B and the complaint establish that the third-party investigators met one time with Richard Dent to allow him "an opportunity to provide his recollection of the events."

¶ 59 In their briefs, respondents also cite *Hadley v. Doe*, 2015 IL 118000, in support of their argument that presuit discovery is unnecessary where the underlying defamation claim is subject to dismissal under section 2-615 because Dent's Rule 224 petition failed to allege facts to overcome the qualified privilege. In *Hadley*, this court found persuasive two lower courts' conclusions that, in ascertaining "whether a petitioner has satisfied Rule 224's necessity requirement, the court must evaluate a defamation complaint to determine whether it will withstand a section 2-615 motion to dismiss." *Id.* ¶ 27. The *Hadley* appellate court likewise relied on those two cases and held that,

" '[i]n ordering the disclosure of a potential defendant's identity pursuant to Rule 224, a court must balance the potential plaintiff's right to redress for unprotected defamatory language against the danger of setting a standard for disclosure that is so low that it effectively chills or eliminates the right to speak anonymously and fails to adequately protect the chosen anonymity of those engaging in nondefamatory public discourse.' " *Id.* ¶ 26 (quoting *Hadley v. Doe*, 2014 IL App (2d) 130489, ¶ 17).

However, *Hadley* and the appellate court decisions it relied upon dealt with a different scenario. It was necessary to show that the allegations could withstand a motion to dismiss under section 2-615 so as "to protect any first amendment interest possessed by the online commentator to engage in nondefamatory, anonymous speech." *Id.* ¶ 9. In *Hadley*, the defendant anonymously posted defamatory statements in the comments section of a newspaper website. *Id.* ¶ 1. The *Hadley*

- 19 -

court rejected the defendant's argument that the statements were not actionable because they were reasonably capable of an innocent construction. See *id.* ¶¶ 31-42. Instead, the comments "conveyed the idea that Hadley was a pedophile or had engaged in sexual acts with children and, thus, had committed criminal conduct." *Id.* ¶ 37. No qualified privilege was at issue in *Hadley*.

¶ 60 Furthermore, the two appellate court cases relied upon by *Hadley* likewise involved anonymous speech that was argued to be constitutionally protected by the first amendment. See *Maxon v. Ottawa Publishing Co.*, 402 Ill. App. 3d 704, 706 (2010); *Stone v. Paddock Publications, Inc.*, 2011 IL App (1st) 093386, ¶¶ 17-18, 26 (observing that "our supreme court has recognized that there are three types of actions in which an allegedly defamatory statement has been held to be protected by the first amendment in the absence of a showing that the statement is *factual*: (1) actions brought by public officials; (2) actions brought by public figures; and (3) actions brought against media defendants by private individuals" (emphasis in original)). The main thrust of this inquiry necessarily focuses on the contents of the statements themselves. See *Stone*, 2011 IL App (1st) 093386, ¶ 26; see also *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 398 (2008) (explaining that "[t]he test for determining whether a statement is protected from defamation claims under the first amendment is whether it can reasonably be interpreted as stating actual fact" and noting that the courts consider "(1) whether the statement has a precise and readily understood meaning, (2) whether the statement is verifiable, and (3) whether the statement's literary or social context signals that it has factual content").

¶ 61 By contrast, to overcome a qualified privilege in the instant context, a Rule 224 petitioner would have to allege facts showing that the publisher directly intended to injure him or acted with reckless disregard for the petitioner's rights and of the resulting consequences to the petitioner. See *Kuwik*, 156 Ill. 2d at 30. These showings and concomitant factual allegations instead focus on the *intent and actions of the publisher*—which presuppose that the Rule 224 petitioner knows the identity of the publisher.

¶ 62 The appellate court case of *Mauvais-Jarvis v. Wong*, 2013 IL App (1st) 120070, aptly illustrates, among other things, how knowing the identity of alleged publishers of defamatory statements enables the Rule 224 petitioner to overcome a

qualified privilege by sufficiently alleging facts that go to the publishers' intent and actions. There, the plaintiff sued several individual defendants and Northwestern University for either defamation or conspiracy to defame by "formally presenting to the Northwestern internal inquiry committee allegations that Mauvais-Jarvis submitted inaccurate data for publication in a scientific paper." *Id.* ¶ 1. The plaintiff appealed from the circuit court's dismissal of the defamation counts due to the court's finding that the statements were protected by absolute privilege. *Id.*

¶ 63    On appeal, the appellate court noted at the outset that, because Northwestern University "receives federal funding for biomedical and behavioral research[,] it is governed by a complex set of federal regulations with respect to investigating research misconduct." *Id.* ¶ 3. Of note, "the regulations impose[d] conditions of strict confidentiality on allegations of research misconduct." *Id.* ¶ 13 (providing that " '[d]isclosure of the identity of respondents and complainants in research misconduct proceedings is limited, to the extent possible, to those who need to know, consistent with a thorough, competent, objective and fair research misconduct proceeding, and as allowed by law' " (quoting 42 C.F.R. § 93.108(a) (2005))). Furthermore, the regulation limited disclosure of records or other evidence from which research subjects could be identified to " 'those who have a need to know to carry out a research misconduct proceeding.' " *Id.* (quoting 42 C.F.R. § 93.108(b) (2005)). Northwestern University's own policy and procedures closely mirrored the federal regulations. *Id.* ¶¶ 15-16.

¶ 64    Nevertheless, the plaintiff knew the identities of at least a few individuals who had accused him of research misconduct. *Id.* ¶ 27. This was because Northwestern's office of research integrity had sent the plaintiff a letter notifying him of who had accused him of the misconduct. *Id.* After an inquiry committee reviewed the allegations and interviewed witnesses, it issued a final report unanimously concluding that the charges were not credible and did not merit a full investigation. *Id.* However, a second inquiry committee was thereafter convened after it became apparent that other data contained in a manuscript was inaccurate. *Id.* ¶ 28. The committee concluded that sufficient evidence was presented to warrant a full investigation into the charges, and the plaintiff filed suit. *Id.*

¶ 65    The appellate court in *Mauvais-Jarvis* analyzed in detail whether the circuit court had properly held that the statements made by certain individuals were

absolutely rather than conditionally privileged. *Id.* ¶¶ 65-103. As the court noted, "[w]here absolute privilege is granted, no cause of action for defamation lies against the person making the statement even if it is made with malice." *Id.* ¶ 71 (citing *Starnes v. International Harvester Co.*, 141 Ill. App. 3d 652, 653-54 (1986)); see also *id.* (stating that " '[a]n absolute privilege provides a complete immunity from civil action even though the statements were made with malice because public policy favors the free and unhindered flow of such information' " (quoting *Zych v. Tucker*, 363 Ill. App. 3d 831, 834 (2006))). The court explained that the category of defamatory statements protected by absolute privilege is very narrow and "has generally been limited to legislative, judicial and some quasi-judicial proceedings and 'other acts of State,' including 'communications made in the discharge of a duty under express authority of law.' " *Id.* ¶ 74 (quoting *Busch v. Bates*, 323 Ill. App. 3d 823, 833 (2001)).

¶ 66    After rejecting several cases cited in support of respondents' argument that the statements were absolutely privileged, the *Mauvais-Jarvis* appellate court noted that it had not discovered "any Illinois case that has found a quasi-judicial proceeding or a 'necessarily preliminary' step toward one in a proceeding before a private entity (which the parties concede[d] Northwestern is) rather than one involving a governmental agency or another type of state actor." *Id.* ¶ 91. The court noted that, even if a private entity could be considered a quasi-judicial entity, Northwestern's office of research integrity lacked the requisite powers necessary to act as such an entity. See *id.* ¶¶ 92-97. The court observed that "jurisdictions that have explicitly addressed the applicability of absolute privilege to university research misconduct proceedings have refused to define such proceedings as quasi-judicial, noting *that they lack the requisite procedural safeguards to protect those accused of research misconduct*." (Emphasis added.) *Id.* ¶ 96 (citing *Arroyo v. Rosen*, 648 A.2d 1074, 1077-78 (Md. Ct. Spec. App. 1994) (holding that statements were not absolutely privileged because the complaint commencing the investigatory committee's proceedings was not made under oath, the proceedings were not public, the witnesses were not sworn under oath nor subject to cross-examination, and no discovery was available)).

¶ 67    Still, the defendants in *Mauvais-Jarvis* maintained that public policy warranted application of absolute privilege, asserting that

"because society has a vital interest in the soundness of scientific research and because the 'need for protection is greater in the educational setting where the subject of the complaint—the educator—is in a position of authority over the student, so fear of retaliation presents a potential obstacle to open airing of grievances.' " *Id.* ¶ 98.

Again, the court rejected this attempt by the respondents to extend absolute privilege to their statements. *Id.* The court noted that Northwestern's policies, which were modeled after the federal regulations, "recognize[d] the need for and str[uck] a balance between protecting complainants and whistleblowers." *Id.* ¶ 99. Furthermore, the court explained that "[p]ublic policy is *** better served by the rule of qualified privilege, since it encourages open communications on matters of research misconduct while not shielding the use of such communications for an individual's malicious purposes." *Id.*

¶ 68        Finally, the *Mauvais-Jarvis* appellate court considered whether the allegedly defamatory statements in that case were protected by qualified privilege. *Id.* ¶ 101. Because the defendants did not alternatively argue that the statements were protected by qualified privilege, the court noted that it had no basis upon which to determine that they were protected by qualified privilege. *Id.* ¶ 103. Still, the court held that the complaint set forth detailed allegations of ill will and malice by the three defendants subject to the defamation count. *Id.* The complaint alleged that one defendant had acted in retaliation for being fired by the plaintiff and the other two defendants acted in reprisal after the plaintiff sought redress with Northwestern's provost and accused its office of research integrity of violating his rights under its policies and federal regulations. *Id.* Accordingly, the court reversed the circuit court's dismissal of the plaintiff's defamation claims and allowed the case to proceed to discovery. *Id.*

¶ 69        The *Mauvais-Jarvis* case—though dealing with a different type of internal investigation—illuminates several facets of the instant case. First, the case demonstrates how knowledge of one's accusers enables a Rule 224 petitioner to sufficiently allege facts to overcome the qualified privilege. For example, the plaintiff alleged that one of the complainants had retaliated against him because he had terminated her employment after documenting what he dubbed "substandard performance in the laboratory" and mistakes she had made with respect to the

manuscript at issue. See *id.* ¶¶ 33-35. She also allegedly had threatened to destroy his career. *Id.* ¶ 35. Obviously, knowledge of one's accuser enables a petitioner to draw upon his or her experience in dealing with that individual, which necessarily informs the question of whether the accuser had acted with malice or reckless disregard. See *Kuwik*, 156 Ill. 2d at 30.

¶ 70    Because the majority buys into the respondents' representations that accusers and witnesses in a sexual harassment investigation are entitled to anonymity even outside the company's internal investigation, the majority effectively elevates what is supposed to be a qualified privilege to an absolute privilege. Unless we presume that a Rule 224 petitioner in this context did what he or she was accused of, already knows who the accusers and witnesses are, or has a verifiable alibi, there is no realistic way for a Rule 224 petitioner to sufficiently allege that the publishers of the allegedly defamatory statements directly intended to injure him or acted with reckless disregard for the petitioner's rights and of the resulting consequences to the petitioner. See *id.*; see also *Mauvais-Jarvis*, 2013 IL App (1st) 120070, ¶ 71 (explaining that a defamation defendant's malice or motive in making a defamatory statement are irrelevant where an absolute privilege applies). This is an alarming notion when one considers that this setup will easily enable false reporting of sexual misconduct.

¶ 71    For example, if several employees would like to get their supervisor fired, they could simply concoct a story that the supervisor inappropriately touched Employee A and maintain a consistent description of the event. Maybe Employee A resents the supervisor for criticizing her work product. Perhaps Employee B knows that, if the supervisor is fired, he or she will receive a promotion and thus has sufficient motive. Such behavior will be emboldened where the employees know that their identities will remain confidential not only in the workplace investigation but even if the supervisor tries to sue for defamation because the supervisor will not be able to sufficiently plead around the qualified privilege. Though I make clear that I do not cast doubt upon the believability of accusers and victims of sexual harassment or the findings of internal sexual harassment investigations—I will not vote in favor of a holding that makes it impossible for a class of individuals to seek relief from what may very possibly be an unjustified injury to their reputation.

¶ 72    Unlike in *Mauvais-Jarvis*, where the appellate court detailed the numerous federal regulations and policies that were aimed at ensuring some semblance of procedural safeguards for the accused, here, we have no idea of the depth and breadth of the investigation undertaken by the third-party investigators in this case or about the specifics of Exelon's own workplace policies or investigation procedures. We do know that Dent knew not his accuser, the witnesses, or the evidence against him, nor did he have an ability to confront or cross-examine the accuser or witnesses. See *Mauvais-Jarvis*, 2013 IL App (1st) 120070, ¶ 97. Yet, the effect of elevating the qualified privilege to an absolute privilege also effectively treats Constellation and its third-party investigators as though they are a quasi-judicial body. See *id.* ¶ 92. I am not content depriving potential defamation plaintiffs who do not know the identities of their accusers or witnesses, nor the evidence against them, of the ability to fight for their reputations by placing them in a position where they must allege sufficient facts to establish malice or reckless acts against shadows.

¶ 73    Nor do I believe that barring consideration of qualified privilege in a section 2-615 motion will inhibit employers' interest in ridding the workplace of sexual harassment by handcuffing victims, witnesses, and investigators by a fear of defamation *liability*.[2] See *Vickers v. Abbott Laboratories*, 308 Ill. App. 3d 393, 402 (1999). That is what the qualified privilege guards against—statements made in the course of a sexual harassment investigation will not be actionable *unless the defamation plaintiff can meet his heightened burden of proof*. See *Kuwik*, 156 Ill. 2d at 24. Were it not for the qualified privilege, the defamation plaintiff would only have to show that the statements were negligently made. *Id.* The qualified privilege assures participants that they will not be unnecessarily subjected to defamation *liability*—not that they will not be sued for defamation. Furthermore, we have been

---

[2]In their brief, respondents assert that

"[t]he appellate court's decision, if upheld, would strongly undermine the State's policy against sexual harassment by making it effectively impossible for employers to ensure victims and witnesses that their identities will be kept confidential. *** The use of Rule 224 to compel disclosure of their identities to the harasser, so as to enable a *retaliatory* defamation claim, will only increase that reluctance and hamper employers' ability to address sexual harassment in the workplace." (Emphasis added.)

Again, respondents ask this court to accept without question the conclusion that the third-party investigation produced a correct finding or that accusers and witnesses are entitled to blanket anonymity.

provided with zero authority to support the idea that accusers and witnesses partaking in a private company's sexual harassment investigation are legally entitled to have their identities remain confidential once before a judicial forum. In the one case cited by respondents dealing with such a sexual harassment investigation, the defamation plaintiff knew the identities of the accuser(s) and the witness(es). See *Vickers*, 308 Ill. App. 3d at 395-96. Certainly, companies and their third-party investigators must abide by various rules in undertaking their investigations into workplace sexual harassment claims and must undertake to protect witnesses' identities or may themselves be subject to liability. Of critical distinction is the fact that the publisher's identity is confidential by virtue of a private corporation's internal investigatory procedures and related rules—not due to the qualified privilege itself or constitutional protection. Accordingly, I disagree with the majority's statement that "[a]llowing a conclusory denial to overcome qualified privilege would, in essence, eviscerate the privilege." *Supra* ¶ 39. The statement assumes that a qualified privilege goes to identity rather than a defamation plaintiff's heightened burden.

¶ 74    Because the publishers' identities are kept confidential by virtue of a private company's and their third-party investigators' obligations in the sexual harassment investigation context—I do not believe that a Rule 224 petitioner must allege sufficient facts establishing that the publishers abused the qualified privilege to meet the rule's necessity requirement. This is because, for all practical purposes, this is next to impossible, such that it deprives an individual of the ability to attempt to restore his reputation. A section 2-615 motion to dismiss should not be granted "*unless it is clearly apparent that no set of facts can be proved* that would entitle the plaintiff to recovery." (Emphasis added.) *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). It is not clearly apparent that petitioners could not prove any set of facts demonstrating that the statements are not qualifiedly privileged where petitioners are without requisite knowledge of the publishers' intents and actions. See *Kuwik*, 156 Ill. 2d at 30. This is circular and self-defeating. As a result, it is unsurprising that petitioners only set forth conclusory allegations in support of their claim for defamation. See *Colson v. Stieg*, 86 Ill. App. 3d 993, 998 (1980) (noting that "bare allegations of knowledge of falsity without underlying supporting facts are not legally sufficient" to overcome a qualified privilege in a case where the plaintiff knew the identity of the defendant); *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 56 (holding that the plaintiffs failed to sufficiently plead malice in

a case where the plaintiffs knew the identity of the defendant). Accordingly, I believe that the majority prematurely holds that the statements of Persons A, B, and C are qualifiedly privileged. I express no opinion on the underlying merits of petitioners' defamation claim. For these reasons, I respectfully dissent.

¶ 75        JUSTICE NEVILLE joins in this dissent.


¶ 76        CHIEF JUSTICE ANNE M. BURKE took no part in the consideration or decision of this case.